Peter T. DeMarco, M.D., Petitioner *v.* Commonwealth of Pennsylvania, Department of Health, Respondent.

Argued October 31, 1978, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., MENCER, ROGERS, DISALLE and CRAIG. Judges BLATT and MACPHAIL did not participate.

*F. Emmett Fitzpatrick*, with him *Nicholas Kozay, Jr.*, for appellant.

*Arthur T. McDermott*, with him *Jennifer A. Stiller*, for appellee.

*James McGirr Kelly,* for amicus curiae, S.O.S. Association, Inc.

OPINION BY JUDGE ROGERS, February 5, 1979:

Peter T. DeMarco, M.D. has filed a petition for review of an order of a hearing examiner appointed by the Secretary of Health which directed the destruction of Dr. DeMarco's supplies of a drug called Procaine-Polyvinylpyrrolidone (Procaine-PVP), which he had manufactured and which the Department of Health had embargoed, and which further directed Dr. DeMarco to cease administering or selling Procaine-PVP.

On January 19, 1978 the Secretary of Health issued an order pursuant to the claimed authority of Section 27 of The Controlled Substance, Drug, Device and Cosmetic Act (the Act), Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §780-127, as follows:

IT IS THEREFORE ORDERED THAT:

(1) All stocks of Procaine-PVP in the possession of Dr. Peter T. DeMarco, and all raw materials and equipment used in preparing or manufacturing Procaine-PVP are hereby embargoed in accordance with the provisions of Section 27 of the Act (35 P.S. §780-127) ; and

(2) Dr. Peter T. DeMarco shall immediately cease and desist from administering Procaine-PVP to any human being; and

(3) Dr. Peter T. DeMarco shall not sell, offer for sale, or give away Procaine-PVP to any person.

A recital to the order declared that the Secretary had probable cause to believe that Dr. DeMarco was engaged in administering a so-called new drug, Procaine-PVP, that said drug was misbranded and contraband.

On the same day, January 19, 1978, representatives of the Department of Health went to Dr. DeMarco's

medical office located in Morrisville, Pennsylvania, inspected them and pursuant to the Secretary's order just mentioned embargoed equipment, solutions and supplies found on the premises and further ordered Dr. DeMarco to cease and desist from administering, selling or giving away Procaine-PVP. They sealed the embargoed materials and carried away samples for testing and examination. After making tests of the samples, the Secretary amended the embargo citation of January 19, 1978 to declare that the Procaine-PVP in Dr. DeMarco's possession was adulterated as well as misbranded and contraband.

The Secretary of Health appointed a hearing examiner who conducted hearings at the conclusion of which he determined that the samples of Procaine-PVP tested and the glass vials containing Procaine-PVP taken were both adulterated and misbranded. He also found that Procaine-PVP is a new drug as defined in the Act, and that Dr. DeMarco had sold, delivered and given away Procaine-PVP. He concluded, based on these findings, that the embargoed Procaine-PVP was contraband as defined by the Act. By order made March 3, 1978, the hearing examiner directed that all of the supplies of Procaine-PVP embargoed by the department should be destroyed at Dr. DeMarco's expense, and that the Secretary's order of January 19, 1978 should continue in effect. The consequences of the continuance of the Secretary's order were that certain of Dr. DeMarco's equipment and his raw materials remained under embargo and that he continued to be interdicted from administering, selling, offering for sale, or giving away Procaine-PVP.

After filing a petition for review, Dr. DeMarco applied to us for a stay of the hearing examiner's order. After a hearing, we stayed the direction that the supplies of embargoed Procaine-PVP be destroyed. We

voided the embargo of raw materials and equipment on the ground that the Act names controlled substances, drugs, devices and cosmetics as the only subjects of embargo and that Dr. DeMarco's equipment and raw materials did not fit this description. We refused to stay the Secretary's order prohibiting Dr. DeMarco from administering, selling, offering for sale or giving away Procaine-PVP.

Dr. DeMarco says that the evidence presented at the examiner's hearings was insufficient to support the hearing examiner's findings that the embargo Procaine-PVP was adulterated, misbranded and contraband. We must affirm the examiner's decision if his findings of fact are supported by substantial evidence. Substantial evidence is the relevant evidence that a reasonable mind can accept as adequate to support a conclusion. *Bovino v. Board of School Directors,* 32 Pa. Commonwealth Ct. 105, 377 A.2d 1284 (1977). We believe the hearing examiner's findings are supported by substantial evidence.

Subsection 27(c) of the Act, 35 P.S. §780-127(c) empowers the hearing examiner to order the destruction of embargoed substances if he is satisfied that they are either adulterated, misbranded or contraband. In the present case the evidence supports the finding that all three conditions existed with respect to Dr. DeMarco's stock of Procaine-PVP.

Adulteration is defined by Section 7 of the Act, 35 P.S. §780-107, which provides in part as follows:

A controlled substance, other drug, device or cosmetic shall be deemed to be adulterated:
(1) (i) If it consists, in whole or *in part,* of any filthy, putrid or decomposed substance; (ii) if it has been prepared, packed or held under unsanitary conditions whereby it may have been contaminated with filth, or whereby it may have

been rendered injurious to health; ... (Emphasis added.)

The evidence of adulteration presented at the hearings was expert testimony that one of Dr. DeMarco's syringes containing Procaine-PVP was found to contain candida parapsylosis, a yeast-like organism associated with the disease of endocarditis in humans. This evidence sufficiently established adulteration.

The evidence of misbranding is stronger. Section 8 of the Act, 35 P.S. §780-108, provides in part:

A controlled substance, other drug or device or cosmetic shall be deemed to be misbranded:

. . . .

(2) If in package form unless it bears a label containing (i) the name and place of business of the manufacturer, packer or distributor, and (ii) an accurate statement of the quantity of the contents in terms of weight measure or numerical count:

. . . .

(6) Unless its labeling bears (i) adequate directions for use, ...

Uncontradicted evidence was presented at the hearing that much of the embargoed Procaine-PVP was contained in glass vials and that these vials were either unlabeled or were marked "Proc-PVP 5x5." There was also testimony that Dr. DeMarco sold vials of Procaine-PVP to one patient for injection by the patient's wife and that these vials contained no label specifying dosage, frequency of use or directions for use. This evidence fully supports the examiner's conclusion that the Procaine-PVP was misbranded as that word is defined in the Act.

There is also substantial evidence that the embargoed Procaine-PVP was contraband. Contraband is defined in Section 2 of the Act, 35 P.S. §780-102, as

"any controlled substance, other drug, device or cosmetic possessed by a person not authorized by law to possess such controlled substance, other drug, device or cosmetic, or obtained or held in a manner contrary to the provisions of this act." The question is whether Dr. DeMarco held his supply of Procaine-PVP, which is an "other drug," in a manner contrary to the provisions of the Act. Section 10 of the Act, 35 P.S. §780-110 provides:

No person shall sell, deliver, offer for sale, hold for sale, or give away, any new drug unless (i) an application with respect thereto has been approved or a notice of claimed investigational exemption for a new drug has been filed under the appropriate Federal act.

The term "new drug" is defined in Section 2 of the Act, 35 P.S. §780-102 as any drug not generally recognized among experts as safe and effective for use or any drug which has become recognized as safe and effective but which has not been used to a material extent or for a material time. At the hearing one Frances Oldhan Kelsey, who holds the degree of doctor of philosophy in Pharmacology, gave expert testimony showing that Procaine-PVP is not recognized among experts as safe and effective for any use other than as a local anesthetic. It is clear that no application with respect to Procaine-PVP has been approved or exemption claimed under any Federal Act. We gather from an amicus curiae brief filed by loyal patients of Dr. DeMarco and from other references in the proceedings that Dr. DeMarco has used the drug as a specific for a number of ailments, including cardiovascular ailments, scleroderma, circulatory troubles, heart disease, bronchial asthma, phlebitis, and general debility. Dr. Kelsey's testimony provided substantial evidence supporting the hearing examiner's finding

that Procaine-PVP as employed by Dr. DeMarco was indeed a new drug. Since, as we have earlier noticed, the record contains evidence that Dr. DeMarco sold Procaine-PVP, the hearing examiner's further determination that Dr. DeMarco held it for sale is supported by the record. Since Section 10 prohibits selling and holding new drugs for sale, Dr. DeMarco's selling and holding of the new drug Procaine-PVP for sale was contrary to the Act and rendered the drug in his possession contraband.

Since Dr. DeMarco's Procaine-PVP was found to be adulterated and misbranded and contraband, any one of which conditions justified its embargo, the hearing examiner after hearing the matter acted within his power in ordering its destruction.

There remain for consideration subparagraphs (2) and (3) of the Secretary's order ordering Dr. DeMarco to cease administering Procaine-PVP and directing him not to sell, offer for sale or give any of it away— provisions continued in effect by the hearing examiner. Dr. DeMarco questions the power of the Secretary of Health to make such an order and hence the authority of the hearing examiner to continue it. It must be remembered that the Secretary's order was made before the embargo, before any testing of the samples or observation of the vials and before hearing. "The power and authority to be exercised by administrative [agencies] must be conferred by legislative language clear and unmistakable. A doubtful power does not exist. Such tribunals are extrajudicial. They should act within the strict and exact limits defined:" *Green v. Milk Control Commission,* 340 Pa. 1, 3, 16 A.2d 9 (1940), *cert. denied,* 312 U.S. 708 (1941). Administrative agencies, being creatures of the legislature, are vested only with those powers conferred by the statute or such as are *necessarily* implied from a grant of such

powers; and where authority is conferred on such an extrajudicial body, the legislative grant of power to act in any particular case must be clear. *Day v. Public Service Commission,* 312 Pa. 381, 167 A. 565 (1933). The Secretary of Health asserts as the basis of his authority to prohibit persons from violating the law, particularly the Act here in question, general descriptions of his duties to protect the health of the citizens of Pennsylvania,[1] and additionally Sections 2, 7, 8 and 10 of the Act we are here concerned with. Surely the general description of the Secretary of Health's function as that of protecting health does not *necessarily* imply the power to command persons to desist from activities the Secretary believes are violations of law. With respect to The Controlled Substance, Drug, Device and Cosmetic Act, neither the sections cited nor any other of its provisions confers or implies any such power. The Act contains a careful description of prohibited acts and the criminal punishment authorized therefor in Section 13, 35 P.S. §780-113. More to the point, Section 25, 35 P.S. §780-125, authorizes the Secretary "to apply to the court of common pleas in the county in which such violation occurs or to the Commonwealth Court for, and such court shall have jurisdiction to grant, a temporary or permanent injunction restraining any person from continued violation of any provision of this act irrespective of the existence of an adequate remedy at law." Clearly the Legislature gave the Secretary no power to issue decrees forbid-

---

[1] The Secretary cites Section 2102(a) of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §532 (a), ("The Department of Health shall have power . . . to protect . . . health") and Section 8 of the Act of April 27, 1905, P.L. 312, 71 P.S. §1403 ("It shall be the duty of the [Secretary of Health] to protect the health of the people . . . and to determine and employ the most efficient and practical means for the prevention and suppression of disease.")

ding violations of the Act; to the contrary, it restricted his authority in this respect to that of seeking injunctive relief in the courts.[2] We are compelled, therefore, to set aside that portion of the hearing examiner's order which continues in effect parts (2) and (3) of the Secretary's order of January 19, 1978, without prejudice to the Secretary's right to seek injunctive relief pursuant to Section 25.

Accordingly, we enter the following

ORDER

AND Now, this 5th day of February, 1979, that part of the hearing examiner's order which directs the destruction at the appellant's expense of the embargoed supplies of Procaine-PVP is affirmed. That part of the hearing examiner's order which directs the continued effectiveness of parts (2) and (3) of the Secretary's order forbidding the appellant to administer, sell, offer for sale or give away Procaine-PVP, is set aside, without prejudice to the Secretary's right to seek injunctive relief pursuant to Section 25 of the Act.

---

[2] In contrast, by Section 610 of The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, added by Section 17 of the Act of July 31, 1970, P.L. 653, 35 P.S. §691.610, the Legislature gave the Department of Environmental Resources the specific authority to issue orders requiring persons to cease violations of The Clean Streams Law.