Thomas J. Judge, Sr., etc., Plaintiff *v.* Allentown and Sacred Heart Hospital Center and The Hartford Insurance Group, Defendants.

Argued February 3, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Don A. Leatherman,* with him *Robert W. Waeger, Skarlatos & Zonarich,* for plaintiff, Thomas J. Judge, Sr.

*Harry J. Stefchak,* Chief Counsel, for plaintiff, Medical Professional Liability Catastrophe Loss Fund of the Commonwealth of Pennsylvania.

*Frank A. Baker, III,* with him *Gary S. Figore* and *Richard F. Stevens, Butz, Hudders & Tallman,* for defendant, Allentown and Sacred Heart Hospital Center.

*Robert H. Holland,* with him *Barbara L. Hollenbach, Holland, Taylor* and *Sorrentino,* for defendant, The Hartford Insurance Group.

*John J. Dautrich, White & Williams,* of counsel: *David W. Marston, Barton L. Post, Post and Schell, P.A.,* and *Alison Douglas Knox, Montgomery, McCracken, Walker & Rhoads,* for defendant, Allen Neurosurgical Association, Inc.

OPINION BY JUDGE WILLIAMS, JR., November 15, 1983:

For disposition are preliminary objections in the nature of demurrers filed by the Hartford Insurance Group (Hartford or Defendant) and its insured, the Allentown and Sacred Heart Hospital Center (Hospital Center or Defendant), to an amended complaint in assumpsit filed by the Director of the Medical Professional Liability Catastrophe Loss Fund (Fund or Plaintiff). In this original action,[1] the Fund demands judgment in indemnity and in equitable subrogation against Defendants as non-contributing parties to the settlement of a medical malpractice action.

The Fund is an executive agency of the Commonwealth of Pennsylvania, established by Article VII of the Health Care Services Malpractice Act (Act),[2] and designed to provide statutory excess liability coverage

---

[1] This Court has original jurisdiction, concurrent with the common pleas courts, under Section 761(a)(2) of the Judicial Code, 42 Pa. C. S. §761(a)(2), of all civil actions or proceedings "[b]y the Commonwealth government, including any officer thereof, acting in his official capacity, except eminent domain proceedings."

[2] Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §§1301.-101-1301.1006. Article VII, which contains provisions pertinent to the Fund, encompasses Section 701-705, 40 P.S. §§1301.701-1301.705.

for health care providers (providers) in the Commonwealth. As the statutory excess liability carrier the Fund satisfies all awards, judgments and settlements arising from medical malpractice actions against eligible providers to the extent a provider's liability share exceeds his basic coverage insurance.[3] Section 701(d) of the Act, 40 P.S. §1301.701(d). The Fund is funded exclusively by the annual and emergency surcharging of participating providers and by income generated from the investment of such contributions. Section 701(e)(4) of the Act, 40 P.S. §1301.701(e)(4).

The present action arose from the following sequence of events. The Hospital Center and two of its staff members, a neurosurgeon and an anesthesiologist, were participating providers when Eugene Issermoyer entered the Hospital Center for minor surgery to correct an irritating facial tic in February 1977. As a result of surgery, Mr. Issermoyer sustained permanent paralysis in both legs and his left arm. In June 1978, the Issermoyers (husband and wife) filed a Complaint with the Arbitration Panels for Health Care naming as defendants, among others, the Hospital Center and the two operating staff physicians. After thirty months of discovery and negotiations, the Issermoyers' action was settled for $1,503,935 on behalf of the Fund and the two staff physicians.[4] Although by the terms of the settlement releases were executed in

---

[3] Basic coverage insurance for providers, other than hospitals, is in the amount of $100,000 per occurrence and $300,000 per annual aggregate. For hospitals, the basic coverage insurance totals $100,000 per occurrence and $1,000,000 per annual aggregate. Such primary coverage is necessary for eligibility to participate in the Fund. Section 701(a)(1)(i) of the Act, 40 P.S. §1301.701(a)(1)(i).

[4] The basic coverage insurance carrier for the two defendant doctors, the Argonaut Insurance Company, contributed $100,000 to the settlement amount for each insured. The Fund provided the remainder of the settlement amount, $1,303,935.

favor of all defendants, the Hospital Center, through its insurer, Hartford, opposed, and refused to contribute to, the settlement.[5]

The Fund, contending that by contributing more than $1,300,000 to the settlement it thereby acquired defendant physicians' right of contribution against the Hospital Center and Hartford through indemnity and equitable subrogation, subsequently instituted an assumpsit action in this Court. Defendants then interposed preliminary objections in the nature of demurrers[6], asserting, *inter alia,* that the Fund, as a creature of statute, lacked the statutory authority to bring this action. We agree.

The Fund, as a statutorily created executive agency of the Commonwealth, must only exercise those powers which have been conferred upon it by the Legislature in clear and unmistakable language. *See, Pennsylvania Human Relations Commission v. Transit Casualty Insurance Co.,* 478 Pa. 430, 438, 387 A.2d 58, 62 (1978). Further, an administrative agency should exercise powers either expressly granted by statute or *necessarily* implied by the conferral of such express powers. *See, DeMarco v. Department of Health,* 40 Pa. Commonwealth Ct. 248, 255-56, 397 A.2d 61, 64 (1979). A *doubtful* power does not exist, however, and an agency must act within the strict and exact limits as statutorily defined. *Id.*

---

[5] By letter dated March 3, 1980, addressed to the Fund, John A. Kelly, Regional Claim Manager for Hartford, denied the Hospital Center's liability and refused to contribute, in any way, to the settlement.

[6] A demurrer admits the truth of all relevant facts pleaded for the sole purpose of testing the legal sufficiency of the challenged pleading. A demurrer admits only well-pleaded, material allegations of fact, and not legal conclusions. *See, Pasquinni v. Bombara,* 68 Pa. Commonwealth Ct. 447, 449, 449 A.2d 804, 805 (1982) (citations omitted).

Plaintiff asserts that the statutory basis for the present action is found at Section 702(f) of the Act, 40 P.S. §1301.702(f), which pertinently provides:

> The director is authorized to defend, litigate, settle or compromise any claim payable by the fund. A health care provider's basic insurance coverage carrier shall have the right to approve any settlement entered into by the director on behalf of its insured health care provider. If the basic insurance coverage carrier does not disapprove a settlement prior to execution by the director, it shall be deemed approved by the basic insurance coverage carrier . . . .

Since the Act does not expressly confer upon the Fund a right of action in indemnity or equitable subrogation against a basic insurance coverage carrier and its insured for refusing to approve and contribute to a settlement, Plaintiff asserts that its authority to bring the instant action is necessarily implied by the Director's express, general power "to defend, litigate, settle or compromise any claim payable by the fund."

Plaintiff's authority to maintain the action *sub judice* is doubtful in that, except for two specific exceptions (discussed *infra*), the Fund is sustained *solely* by the levying of annual and emergency surcharges on participating providers. Section 701(e)-(4). These surcharges produce income sufficient to reimburse the fund for the payment of claims and expenses incurred during the prior calendar year and to maintain an additional $15,000,000 surplus. Section 701(e)(1) of the Act, 40 P.S. §1301.701(e)(1). As an exception to the requirement that surcharges be the "sole and exclusive" funding source, Plaintiff's right of action in indemnity and equitable subrogation against Defendants should be expressly and specifically granted by clear and unambiguous statutory

language. Other than referencing the Director's general litigation powers, however, Plaintiff has not directed us to specific provisions expressly granting it the authority necessary to maintain the present action.

The omission of a statutory provision expressly allowing Plaintiff to bring an action under the circumstances of the instant case is particularly egregious in that the Act expressly grants to the Fund the full right of indemnity (including defense costs) whenever an insurer or provider willfully conceals information which delays the filing of a claim until more than four years after the occurrence of the tort. Section 605 of the Act, 40 P.S. §1301.605. The Act also requires an insurer (or self-insured) to pay the entire award or verdict if the Fund is prejudiced by a failure to give the Director prompt notice of a potential claim. Section 702(c) of the Act, 40 P.S. §1301.702(c). Since Plaintiff does not aver that Defendants willfully concealed information or failed to provide prompt notice of a claim, we conclude that Plaintiff lacked a statutory basis for, and acted without statutory authority in, instituting the present action. *See, Strunack v. Ecker,* 283 Pa. Superior Ct. 585, 587, 424 A.2d 1355, 1357 (1981), *rev'd on other grounds,* 496 Pa. 290, 436 A.2d 1187 (1981) (where certain things are specifically designated in a statute, all omissions should be understood as exclusions).

Accordingly, both Defendants' preliminary objections in the nature of demurrers are sustained.

### ORDER

AND Now, this 15th day of November, 1983, Defendants' preliminary objections in the nature of demurrers are sustained and Plaintiff's amended complaint in assumpsit is dismissed.