118 Pa. Commonwealth Ct. 635 (1988)
546 A.2d 720
Pennsylvania Medical Society, Petitioner
v.
Commonwealth of Pennsylvania, State Board of Medicine, Respondent.
Pennsylvania Osteopathic Medical Association, Petitioner
v.
Commonwealth of Pennsylvania, State Board of Osteopathic Medicine, Respondent.
Nos. 2284 C.D. 1987 and 2386 C.D. 1987.
Commonwealth Court of Pennsylvania.
Argued June 13, 1988.
August 18, 1988.
*636 Argued June 13, 1988, before Judge MacPHAIL, and Senior Judges BARBIERI and KALISH, sitting as a panel of three.
Robert B. Hoffman, Reed, Smith, Shaw & McClay, for petitioner, Pennsylvania Medical Society.
Roger F. Cox, with him, Lawrence J. Beaser, Blank, Rome, Comisky & McCauley, for petitioner, Pennsylvania Osteopathic Medical Association.
*637 Gwendolyn T. Mosley, Deputy Attorney General, with her, Andrew S. Gordon, Chief Deputy Attorney General, John G. Knorr, III, Chief Deputy Attorney General, Chief, Litigation Section, Alexandria J. Matthews, Counsel, and LeRoy S. Zimmerman, Attorney General, for respondents.
Richard B. Wickersham, Jr., with him, Michael C. Hemsley, Griffith & Burr, P.C., for amicus curiae, Pennsylvania Psychiatric Society.
OPINION BY JUDGE MacPHAIL, August 18, 1988:
Petitioners, Pennsylvania Medical Society and Pennsylvania Osteopathic Medical Association, have filed motions for summary judgment with regard to petitions for review requesting injunctive and declaratory relief filed against the State Board of Medicine and the State Board of Osteopathic Medicine (Boards).[1]
The Boards in January of 1987 adopted regulations governing the use of amphetamine and amphetamine-like drugs known as "sympathomimetic amines" (amines). The regulations[2] cover three distinct areas: weight control limitations, a waiver procedure, and record access and reporting requirements. Petitioners have limited their challenges in this proceeding to the waiver procedures.
It is provided in 49 Pa. Code §16.96(c), (e) and (f) and in 49 Pa. Code §25.211(c), (e) and (f) that medical and osteopathic physicians may not treat patients with the amines in an unrestricted manner unless the affliction is one described in subsection (c)(1)-(5). In all other circumstances, the physician may not prescribe the *638 amines for more than 45 days in any twelve-month period without a waiver from the respective Board.
Pa. R.C.P. No. 1035(b) provides that we may enter summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. In the instant case, the Boards do not contend that there is any genuine issue of material fact. The oral arguments, briefs of the litigants and the brief of amicus curiae[3] focus on whether Petitioners are entitled to judgment as a matter of law. We believe they are.
Petitioners contend that only The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act), Act of April 14, 1972, P.L. 233, as amended, 35 P.S. §§780-101  780-144, governs the prescribing, administering and dispensing of controlled substances. Petitioners aver as well that the waiver process provisions set forth in the regulations promulgated pursuant to the Osteopathic Medical Practice Act (Osteopathic Practice Act), Act of October 5, 1978, P.L. 1109, as amended, 63 P.S. §§271.1  271.18 and the Medical Practice Act of 1985 (Medical Practice Act), Act of December 20, 1985, P.L. 457, as amended, 63 P.S. §§422.1  422.45, unlawfully vest in the Boards' authority to review patient-specific decisions made by physicians; that the waiver process provisions unlawfully require physicians to submit patient-specific treatment information; and, the waiver process involves adjudications without provision for hearings and appeals.
We shall principally address the issue of whether the waiver process provisions which vest oversight in the Boards is an abuse of the Boards' regulatory authority. It is Petitioners' contention that the implementation of *639 the challenged regulations will result in the Boards practicing medicine rather than regulating it.
Section 8 of the Medical Practice Act, 63 P.S. §422.8, vests in the State Board of Medicine power to adopt such regulations as are reasonably necessary to carry out the purposes of that Act. In addition, Section 41(8)(ii) of the Act, 63 P.S. §422.41(8)(ii), gives that Board authority to promulgate regulations which define the "accepted standard of care" which all practitioners must meet or suffer disciplinary action from the Board.
Section 16 of the Osteopathic Practice Act, 63 P.S. §271.16, vests in the State Board of Osteopathic Medicine the power to adopt and revise regulations which are reasonably necessary to carry out the purpose of that Act.
This Court has held that a legislative regulation promulgated under an express or implied grant of power is valid if written within that power, if issued pursuant to proper procedure and if reasonable. Pennsylvania Association of Life Underwriters v. Commonwealth, 29 Pa. Commonwealth Ct. 459, 371 A.2d 564 (1977), aff'd, 482 Pa. 330, 393 A.2d 1131 (1978). Moreover, regulations promulgated pursuant to statutory authority will not be disturbed in the absence of fraud, bad faith or abuse of power. Ernst v. Department of Public Welfare, 37 Pa. Commonwealth Ct. 643, 391 A.2d 1116 (1978). We are mindful, however, that the power and authority exercised by an administrative agency in its rule-making must be conferred by language that is clear and unmistakable and the regulatory action must be within the strict and exact limits defined by the statute. DeMarco v. Department of Health, 40 Pa. Commonwealth Ct. 248, 397 A.2d 61 (1979).
Thus, even where we are satisfied that an administrative agency is empowered to promulgate regulations, we must further determine whether the regulations so *640 adopted are within the bounds of the statute. State Medical Board regulations, which are practically identical with Osteopathic Board regulations, provide that:
A medical doctor may apply for a waiver of the requirements of subsection (c)(6) and (7), with respect to the intended use of a drug described in subsection (a) to diagnose or treat a condition of a specific patient, by submitting a written request for a waiver to the Board. The request shall identify the drug, the diagnosis, the proposed regimen for using the drug and other information necessary for the comprehensive evaluation of its merit. The request shall also identify the patient by the five-digit identification number assigned to the patient in compliance with subsection (d). If the medical doctor requesting the waiver demonstrates to the satisfaction of the Board that a waiver would further legitimate medical purposes, the Board will issue a written waiver for the treatment or diagnosis of a specific patient, subject to terms and conditions it deems appropriate.
49 Pa. Code §16.96(e).
It will be observed that the regulation requires that the Boards make decisions on a "paper review" of what the doctors refer to as "patient-specific" medical treatment. Petitioners contend that this is the practice of medicine, not the regulation of it. The Boards counter that the regulations merely define an accepted standard of care which falls within their statutory authority.
We now proceed to examine whether these Boards have unlawfully extended their authority by the invocation of a compulsory "second opinion" for a specific patient under a specific doctor's care, on the theory that such a regulation is a standard of care.
*641 Subchapter F of the regulations promulgated by the State Board of Medicine, 49 Pa. Code §§16.91  1696, is entitled "Minimum Standards of Practice." Our review of those regulations indicates that with the exception of §16.96(e) and (f), the regulations do describe standards  such as record-keeping, identifying information on prescriptions, labeling of dispensed drugs, etc. The provisions of Section 16.96(e) and (f), however, relate not to a statement of a standard but rather to a requirement that doctors submit a diagnosis and treatment schedule for review to a Board not composed entirely of peers.[4]
The only regulation adopted by the State Board of Osteopathic Medicine relating to minimum standards of practice, appears as subchapter D in the regulations and is the regulation here challenged by Petitioners.
Our review of the provisions of the Medical Practice Act and the Osteopathic Practice Act leads us to the conclusion that the legislative purpose of both Acts was to provide for the proper licensing of practitioners by duly constituted Boards which could, by administrative regulation, establish standards of care and conduct by practitioners. We do not believe that that purpose encompasses a compulsory patient-specific review of diagnoses and treatment provided by a licensed practitioner where there is no indication that any provision of the Drug Act or the Medical Practice Act or the Osteopathic Practice Act has been violated. Nor do we believe that the challenged regulations constitute "accepted standards of care" It seems obvious to us that setting an arbitrary 45-day limit for the administering of a drug for healing purposes is not a standard of care but a restriction on drug use which is adequately addressed and controlled by the Drug Act.
*642 In any event, we are satisfied that the requirement of the written waiver from the Boards for patient-specific treatment by a licensed practitioner is an unreasonable exercise of bureaucratic authority and an abuse thereof. In view of our disposition of this issue, we find it unnecessary to address Petitioners' other challenges.[5]
We, accordingly, will enter judgment for Petitioners declaring that the challenged regulations are null, void and unenforceable against Petitioners.

ORDER IN 2284 C.D. 1987
It is ordered that summary judgment be and is hereby entered in favor of the Pennsylvania Medical Society and against the State Board of Medicine declaring that the provisions of 49 Pa. Code §§16.96(c)(6-7) and 16.96(e) and (f) are null, void and unenforceable.

ORDER IN 2386 C.D. 1987
It is ordered that summary judgment be and is hereby entered in favor of the Pennsylvania Osteopathic Medical Association and against the State Board of Osteopathic Medicine declaring that the provisions of 49 Pa. Code §§25.211(c)(6-7) and 25.211(e) and (f) are null, void and unenforceable.

AMENDED ORDER IN 2284 C.D. 1987
AND NOW, this 24th day of August, 1988, upon consideration of Petitioner's Motion to Clarify and/or Amend Order of August 18, 1988, and respondent's response thereto, it is hereby ordered that the motion is *643 GRANTED. The order of August 18, 1988 is amended to read as follows:
It is ordered that summary judgment be and is hereby entered in favor of the Pennsylvania Medical Society and against the State Board of Medicine declaring that the provisions of 49 Pa. Code §§15.96(c)(6-7), insofar as they impose durational limitations on the use of sympathomimetic amines, and §16.96(e) and (f), in their entirety, are null, void, and unenforceable.
This amended order shall be considered the final order in this case for the purpose of further appeal.

AMENDED ORDER IN 2386 C.D. 1987
AND NOW, this 24th day of August, 1988, upon consideration of Petitioner's Motion to Clarify and/or Amend Order of August 18, 1988, and respondent's response thereto, it is hereby ordered that the motion is GRANTED. The order of August 18, 1988 is amended to read as follows:
It is ordered that summary judgment be and is hereby entered in favor of the Pennsylvania Osteopathic Medical Association and against the State Board of Osteopathic Medicine declaring that the provisions of 49 Pa. Code §§25.211(c)(6-7), insofar as they impose durational limitations on the use of sympathomimetic amines, and §25.211(e) and (f), in their entirety, are null, void, and unenforceable.
This amended order shall be considered the final order in this case for the purpose of further appeal.
NOTES
[1] The actions have been consolidated by prior order of this Court.
[2] See 49 Pa. Code §16.96 and 49 Pa. Code §25.211.
[3] Pennsylvania Psychiatric Society.
[4] See Section 3(a) of the Medical Practice Act, 63 P.S. §422.3(a) and Section 2.1(a) of the Osteopathic Practice Act, 63 P.S. §271.2a(a) which require lay representation on the Boards.
[5] We do observe, however, that Section 9(a) of the Medical Practice Act, 63 P.S. §422.9(a), does provide for appeals of all actions taken by the State Board of Medicine. Since the waiver provision requires the Board to act on applications by practitioners, Section 9(a) would mandate the right of appeal.