147 Pa. Commonwealth Ct. 487 (1992)
608 A.2d 613
PENNSYLVANIA ASSOCIATION OF REHABILITATION FACILITIES, Petitioner,
v.
Constance B. FOSTER, Insurance Commissioner of the Commonwealth of Pennsylvania and the Pennsylvania Insurance Department, Respondents.
Commonwealth Court of Pennsylvania.
Argued March 2, 1992.
Decided April 28, 1992.
*489 Gregg W. Mackuse, for respondents.
Christopher A. Lewis, for petitioner.
Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.
PELLEGRINI, Judge.
Constance B. Foster, Insurance Commissioner of the Commonwealth of Pennsylvania and the Pennsylvania Insurance Department (collectively the Department) file Preliminary Objections to a Petition for Review filed by the Pennsylvania Association of Rehabilitation Facilities (Association) seeking declaratory and injunctive relief from this Court.[1]
*490 The Association is a non-profit organization which represents over 150 rehabilitation facilities in Pennsylvania. The Association has filed a Petition for Review challenging the validity of Section 69.43(b) of Regulation 11-91, now found at 31 Pa.Code § 69.43(b). This regulation was one of several final regulations promulgated by the Department pursuant to the medical cost containment provisions of the Act of February 7, 1990, P.L. 1990-6 (commonly referred to as Act 6), which amended Section 1797 of the Pennsylvania Motor Vehicle Financial Responsibility Law (Law), Act of February 12, 1984, P.L. 53, as amended, 75 Pa.C.S. § 1797. See 31 Pa.Code §§ 69.1-69.55.
Act 6, which became effective July 1, 1990, was enacted to reduce automobile insurance rates by, among other things, placing limits on the amount a medical provider, such as those represented by the Association, can receive from the insurer for treatment of automobile accident victims. These limits are set forth in Section 1797(a) of the Law which provides in relevant part that:
(a) General rule  A person or institution providing treatment, accommodations, products or services to an injured person for an injury . . . [suffered in an automobile accident covered by an insurance policy issued in Pennsylvania]. . . shall not require, request or accept payment for the treatment, accommodations, products or services in excess of 110% of the prevailing charge at the 75th percentile; 110% of the applicable fee schedule, the recommended fee or the inflation index charge; or 110% of the diagnostic-related groups (DRG) payment; whichever pertains to the specialty service involved, determined to be applicable in this Commonwealth under the Medicare program for comparable services at the time the service was rendered, or the provider's usual and customary charge, whichever is less. . . . If the commissioner determines that an allowance under the Medicare program is not reasonable, he may adopt a different allowance by regulation, which allowance shall be applied against the percentage limitation in this subsection. If a *491 prevailing charge, fee schedule, recommended fee, inflation index charge or DRG payment has not been calculated under the Medicare program for a particular treatment, accommodation, product or service, the amount of payment may not exceed 80% of the provider's usual and customary charge.

75 Pa.C.S. § 1797(a). (Emphasis added.)
Following the enactment of Section 1797, the Department promulgated several new regulations including Section 69.43(b), which provides in relevant part:
If the Medicare reimbursement allowance is the Medicare aggregate payment in such areas including out-patient services, rehabilitation services, and home health care services, payment shall be 110% of the actual cost based upon the cost-to-charge ratios for each ancillary, out-patient, or other reimbursable cost center utilized by the insured. . . . Payment for in-patient rehabilitation services shall consist of the routine cost per diem (room and board) plus the actual cost based upon the cost-to-charge ratio of each ancillary cost center service times 110% The costs used to develop these payments shall be based upon the latest audited Medicare cost report for that facility.
31 Pa.Code § 69.43(b). (Emphasis added.)
Through promulgation of this regulation, payment for rehabilitation services was to be paid at 110% of actual cost rather than at 80% of the provider's usual and customary charge (UCC). Just before Section 69.43(b) was to take effect, the Association filed this Petition for Review contending that the Department, by promulgating Section 69.43(b), exceeded its statutory authority under Section 1797(a) of the Law by creating a new type of reimbursement allowance[2] for rehabilitation facilities not authorized by Act 6.
*492 The Association contends that until the promulgation of Section 69.43(b), no reimbursement rate under the Medicare program existed for the services performed by rehabilitation facilities and that the Department consistently applied the 80% of UCC reimbursement rate to the Association's members. The Association argues that the express language of Section 1797(a) only authorizes the Department to promulgate a regulation to change a reimbursement allowance when an existing Medicare reimbursement allowance under Section 1797(a) of the Law is found to be unreasonable by the Commissioner,[3] not where no Medicare reimbursement allowance exists.
The Association further contends in its Petition for Review that even if the Department acted within its authority, the application of the regulation would be unconstitutionally confiscatory and would result in termination of rehabilitation services to automobile accident victims by its members.[4] The Department has filed Preliminary Objections to the Association's Petition for Review mainly arguing that the Association has failed to exhaust its administrative remedies and has failed to join indispensable parties, which are now before this Court.[5]
*493 As to the Department's objection that this Court lacks subject matter jurisdiction to entertain the Association's contentions because the Association has failed to exhaust available administrative remedies, the Department contends that the Association has an available administrative remedy with the Department under Section 69.12(b) of Regulation 91-11,[6] which provides that:
(b) A provider may seek a determination that a Medicare reimbursement allowance under the Medicare Program is unreasonable by applying to the Department for a deviation from the Medicare reimbursement allowance. The application shall be provider specific and shall be for the specific Medicare reimbursement allowance that is believed to be unreasonable. The application for a different Medicare reimbursement allowance will be subject to a formal adjudicatory hearing in accordance with 2 Pa.C.S. §§ 501-508 and 701-704 (relating to Administrative Agency Law).
31 Pa.Code § 69.12(b). (Emphasis added.)
The exhaustion of administrative remedies requirement is a judge-made rule intended to prevent premature judicial intervention into the administrative process. National Solid Waste Management v. Casey, 135 Pa.Commonwealth Ct. 134, 580 A.2d 893 (1990). The exhaustion of remedies requirement is also found in Section 7541(c)(2) of the Pennsylvania Declaratory Judgments Act (DJA), 42 Pa.C.S. § 7541(c)(2), which precludes this Court from granting declaratory relief if the exclusive jurisdiction of the action lies with a tribunal other than this Court, such as the Department.
In National Solid Waste this Court stated that:
[I]t is appropriate to defer judicial review where the question presented is one within an agency specialization and where the administrative remedy is likely to produce the desired result. However, the doctrine that administrative remedies must be first exhausted is not so *494 inflexible as to bar either legal or equitable jurisdiction where the available administrative remedy is inadequate to alleviate the injuries sustained.

Id., 135 Pa.Commonwealth Ct. at 141-142, 580 A.2d at 897. (Citations omitted.) (Emphasis added.)
Administrative agencies have ancillary jurisdiction to rule on the validity of their own regulations in actions before them challenging the application or enforcement of the allegedly invalid regulation. Arsenal Coal Company v. Department of Environmental Resources, 505 Pa. 198, 477 A.2d 1333 (1984); Croner, Inc., v. Department of Environmental Resources, 139 Pa.Commonwealth Ct. 43, 589 A.2d 1183 (1991); Harleysville Mutual Ins. Co. v. Catastrophic Loss Trust Fund, 101 Pa.Commonwealth Ct. 215, 515 A.2d 1039 (1986).
However, this Court possesses subject matter jurisdiction when administrative remedies are either unavailable or inadequate, or if the administrative process is incapable of providing the relief sought by the complaining party. Frye Construction, Inc. v. City of Monongahela, 526 Pa. 170, 584 A.2d 946 (1991); Ohio Casualty; Marinari. Where the administrative remedy is inadequate with respect to the alleged injury, or where the administrative expertise of the agency is not required for the resolution of the issue, compliance with rule requiring exhaustion of remedies is not required. Ohio Casualty; Feingold v. Bell of Pennsylvania, 477 Pa. 1, 383 A.2d 791 (1977); Marinari.
Moreover, this Court has the jurisdiction to conduct a pre-enforcement review of the regulation where an administrative remedy is either unavailable or inadequate and the effect of the regulation on the party seeking review is direct and immediate. In Arsenal Coal our Supreme Court reversed this Court's Order sustaining the Department of Environmental Resources (DER) Preliminary Objection to this Court's jurisdiction to entertain an equity action brought by Arsenal Coal because of the inadequacy of the administrative remedy and the direct and immediate impact *495 of the challenged regulation on the industry. Arsenal Coal. Arsenal was seeking injunctive relief from this Court to prevent the implementation of certain pollution regulations it contended were promulgated in excess of the DER's statutory authority. The DER contended that the Environmental Quality Board (EQB) had jurisdiction to hear Arsenal's contentions. Id.
The Supreme Court rejected the DER's argument stating that:
[T]he propriety of invoking the original equitable jurisdiction of the Commonwealth Court in a case seeking pre-enforcement review of a substantial challenge to the validity of regulations promulgated by an administrative agency is clear. A court of equity, however, must refrain from exercising its jurisdiction when there exists an adequate statutory remedy.

* * * * * *
[However,] [w]here the effect of the challenged regulations upon the industry regulated is direct and immediate, the hardship thus presented suffices to establish justiciability of the challenge in advance of enforcement.

Id., 505 Pa. at 208-09, 477 A.2d at 1338-39. (Emphasis added.)
The Supreme Court found that the only remedy available to Arsenal for a review of the validity of the regulations was an appeal to the EQB from an enforcement decision of the DER. The Supreme Court held that this remedy was inadequate because of the lengthy process of enforcement and review and the hardship and uncertainty to the industry which would occur if those in the industry were to either comply, or refuse to comply, with the regulation, and then seek review before the EQB. Arsenal Coal, 505 Pa. at 210-12, 477 A.2d at 1339-40. See also Neshaminy Water Resources Authority v. Department of Environmental Resources, 511 Pa. 334, 513 A.2d 979 (1986).
Applying Arsenal Coal in Constanza v. Department of Environmental Resources, 134 Pa.Commonwealth Ct. 410, 579 A.2d 447 (1990), we held that where the challenged *496 regulation is not self-executing nor currently in effect, and where no allegations are made that an immediate threat to the industry exists prior to agency action to effectuate the regulation, the Court will decline to exercise jurisdiction and transfer the case to the agency. See also Grand Central Sanitary Landfill, Inc. v. Department of Environmental Resources, 123 Pa.Commonwealth Ct. 498, 554 A.2d 182 (1989).
In the present case, the Association contends that Section 69.12(b) does not provide an available or adequate administrative remedy because, by its very language, the only relief which can be granted is a determination by the Commissioner that a Medicare reimbursement allowance existing under the Medicare program is unreasonable and a deviation from that allowance. The Association argues that it is not seeking a deviation from the reimbursement allowance promulgated by Section 69.43(b), but that it seeks a pre-enforcement declaration that the regulation is invalid because it is at variance with Act 6. The Association argues in its Petition for Review that a declaration is necessary to avoid the substantial irreparable harm which will result if the reimbursement allowance is applied and its members required to challenge the regulation before the Commissioner.[7]
Section 69.12(b) does not provide an available and adequate remedy for the Association's contentions. Section 69.12(b) only authorizes relief from an existing Medicare reimbursement allowance provided under Section 69.43(b), the challenged regulation. It contains no language which suggests that the Commissioner can grant the Association's request for the 80% of UCC rate. Under this regulation, *497 the Commissioner cannot consider a request to adopt 80% of a UCC reimbursement rate because she is only authorized to issue adjustments from Medicare rates, not adopt new ones.
Moreover, because Section 69.43(b) is a self-executing regulation which will have an immediate impact and no action is currently pending before the Department challenging the enforcement of the regulation, this Court may exercise pre-enforcement review to determine the regulation's validity in order to avoid the substantial injury which the Association alleges will result if the reimbursement rate provided by Section 69.43(b) is implemented. To avoid substantial harm to the Association's members and those who must use rehabilitation facilities, pre-enforcement review is appropriate. Therefore, we overrule the Department's first and second Preliminary Objection.
As to the Department's objection that the Association has failed to join all parties which have an interest which would be affected by a declaration of this Court, the Department contends that because Section 69.43(b) also applies to out-patient services and home health care services, these providers are indispensable parties and must be joined in this action as required under Section 7540(a) of the DJA, 75 Pa.C.S. § 7540(a).
"A party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights." Sprague v. Casey, 520 Pa. 38, 48, 550 A.2d 184, 189 (1988). (Emphasis added.) If the merits of a case can be decided without prejudice to the rights of an absent party, the court may proceed. Id.; Mechanicsburg Area School District v. Kline, 494 Pa. 476, 431 A.2d 953 (1981).
An argument similar to that of the Department's was rejected by our Supreme Court in Mechanicsburg Area School District which held that other school districts were not indispensable parties to a declaratory judgment action filed against the Secretary of Education by one school *498 district challenging the method used to determine school subsidies. The Supreme Court held that the other school districts' rights were not impaired because their rights were not essential to a decision on the merits. Id., 494 Pa. at 482-83, 431 A.2d at 958.
In Pennsylvania Medical Society v. Foster, 137 Pa.Commonwealth Ct. 192, 205, 585 A.2d 595, 601 (1991), this Court held that insurance companies were not necessary parties to a physician's declaratory judgment action challenging the validity of Section 1797(a), because the physician's case could be determined without prejudice to the rights of the insurance companies even though the insurance companies pay the reimbursement amounts specified in the statute.
In the present case, the rights of other facilities providing out-patient or home health care services will not be impaired by this litigation. These facilities are currently receiving the 80% of UCC reimbursement rate and if we rule in favor of the Association on the merits, they will continue to receive that rate. If we rule against the Association and find that the Department properly promulgated Section 69.43(b), these other facilities would still have the right to seek a deviation from the reimbursement allowance under Section 69.43(b) by applying to the Department under Section 69.12(b). Therefore, we overrule the Department's third Preliminary Objection.
The Department also files a demurrer to the Association's contention that Section 69.43(b) is unconstitutionally confiscatory. Because we have ruled that this Court will exercise its jurisdiction and determine whether Section 69.43(b) is valid, it would be premature to rule on whether the Association sets forth a valid claim that it is also confiscatory. Therefore, we overrule the Department's fifth Preliminary Objection.[8]
The Department also asks this Court to order the Association to file a more specific pleading. The Department *499 argues that the Association's contention in its Petition for Review that Section 69.43(b) is unconstitutionally confiscatory is not specific enough and it leaves the Department open to other constitutional violations besides an illegal taking. We find that the Association's contention in this regard has the required specificity. Therefore, we overrule the Department's sixth Preliminary Objection.
Accordingly, we overrule all of the Department's Preliminary Objections.

ORDER
AND NOW, this 28th day of April, 1992, all of the Preliminary Objections against the Association's Petition for Review filed by the Department are overruled. The Commissioner is directed to file an Answer to the Petition for Review within thirty (30) days of the entry of this Order.
NOTES
[1] The Associations Petition for Review was filed in this Court's original jurisdiction pursuant to Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a).
[2] Our use of the term "reimbursement allowance" is meant to include any and all prevailing charges, fee schedules, recommended fees, inflation index charges or DRG payments under the Medicare program as specified under Section 1797(a) of the Law.
[3] This Court has held that a legislative regulation of an administrative agency "promulgated under an express or implied grant of power is valid if written within that power, if issued pursuant to proper procedure and if reasonable." Pennsylvania Medical Society v. Pennsylvania State Board of Medicine, 118 Pa.Commonwealth Ct. 635, 639, 546 A.2d 720, 722 (1988) (Emphasis added.) Moreover, "the power and authority exercised by an administrative agency in its rule-making must be conferred by language that is clear and unmistakable and the regulatory action must be within the strict and exact limits defined by the statute." Id. (Emphasis added.)
[4] Along with its Petition for Review, the Association filed an Application for Special Relief which this Court granted on December 6, 1991, enjoining the Department from enforcing Section 69.43(b).
[5] In ruling on the Department's Preliminary Objections, this Court must accept all well-pleaded facts in the Association's Petition for Review and all inferences reasonably deducted therefrom. Ohio Casualty Group of Insurance Co. v. Argonaut Insurance Co., 514 Pa. 430, 525 A.2d 1195 (1987); Marinari v. Department of Environmental Resources, 129 Pa.Commonwealth Ct. 569, 566 A.2d 385 (1989).
[6] This regulation was promulgated at the same time as the contested regulation, Section 69.43(b).
[7] The Department argues that the Association raised these same contentions when the regulations were being reviewed by the Independent Regulatory Review Commission (IRRC). The Department states that while the IRRC found some merit in the Association's contention that the reimbursement rate provided by Section 69.43(b) will result in substantial losses by the Association's members, the IRRC found that the Association's only remedy was to seek an adjudication before the Commissioner pursuant to Section 69.12(b). See 21 Pa.B. 5102-04 (1991).
[8] The Department withdrew its fourth Preliminary Objection alleging improper service.