## Med/Aid Inc. v. State Farm Insurance Co.

C.P. of Lawrence County, nos. 10471 of 1995, C.A. and 10714 of 1995, C.A.

*Edward Leymarie Jr.*, for plaintiff.
*William R. Shaffer*, for defendant.

PRATT, *J.*, June 30, 1997—The above-captioned cases were consolidated by this court's order, issued August 19, 1995, as they share a common factual basis and legal issues.

Plaintiff Med/Aid Inc. brought this action against defendant State Farm Insurance Company seeking payments for medical services, which payments were unpaid, overdue, as well as interest and attorney's fees pursuant to 75 Pa.C.S. 1716. A nonjury trial was conducted on December 6, 1996.

The underlying facts are not in dispute. Med/Aid provided outpatient rehabilitation services following

automobile accidents to Eugene Gabriel, Erik Bunnell, Debra L. Carr, Kiley Cozza, Alex Haswell, Brady Hilke, Mariam Monsour, Carl Omer, Diana Robinson, Dorjoyre Waters, and William Cosgrove, all of whom were covered by auto insurance policies issued by State Farm. Med/Aid originally billed these services to State Farm using HCFA Form 1500, an approved form under 31 Pa. Code §69.25(a), designed for use in non-Medicare payment situations. Relying on the submitted billing information, State Farm paid Med/Aid at 80 percent of the usual and customary charge.

In August 1994, Med/Aid determined that they had been billing State Farm incorrectly. For purposes of Medicare, Med/Aid is classified as a cost-to-charge facility. Following the Act 6 amendments to section 1797 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. 1797, in 1990, the Pennsylvania Insurance Department promulgated regulations applying the billing procedures and payment limitations of the Medicare system to the payment of all medical services provided under the MVFRL, regardless of the insured individual's eligibility for Medicare. See 31 Pa. Code §§69.1-69.55.

Under section 69.43(b) of the insurance department's regulations, outpatient rehabilitation services, such as those provided to the insured individuals by Med/Aid, are to be reimbursed at "110 percent of the actual cost based upon the cost-to-charge ratios" of the facility. 31 Pa. Code §69.43(b). The cost-to-charge ratio is based on figures derived from the latest audit of the facility by Medicare. Med/Aid's cost-to-charge ratio following its audit for the period of April 1, 1992—March 31, 1993 was 0.856576.

In addition to using the incorrect form, neither Med/Aid nor its payment intermediary, Veritas, had pro-

vided State Farm with the cost-to-charge ratio. Consequently, State Farm was unable to calculate payment based on the cost-to-charge ratio. Med/Aid began billing under the 110 percent of the cost-to-charge ratio method in August 1994. Veritas subsequently provided the cost-to-charge ratio information and State Farm has reimbursed Med/Aid for newly billed services at 110 percent of the cost-to-charge ratio since September 1994.

The dispute between the parties centers around payment for the balance due when Med/Aid submitted corrected bills for previously reimbursed services. Under the cost-to-charge method, Med/Aid's charges exceeded the previously reimbursed amounts calculated under the 80 percent of the usual and customary rate, UCR, method, and Med/Aid now seeks payment for the difference as reflected by its corrected bills. State Farm refuses to pay these further charges contending that they are not obligated to pay, as State Farm has already been billed once and paid what it believes is the authorized fee schedule, which Med/Aid had previously accepted as full payment.

State Farm points to portions of two other Act 6 regulations, sections 69.21 and 69.43(c), in support of their position that the UCR rate is the appropriate reimbursement. Section 69.21 states, "if no Medicare payment has been calculated, payment shall be at 80 percent of the provider's usual customary charges." 31 Pa. Code §69.21. Section 69.43(c) amplifies this:

"An insurer shall pay 80 percent of the provider's usual and customary charge for services rendered if no Medicare payment exists. In calculating the usual and customary charge, an insurer may utilize the requested payment amount on the provider's bills for services or data collected by the carrier or intermediators to the extent that the data is made available." 31 Pa. Code §69.43(c).

Pursuant to these regulations, State Farm clearly acted reasonably in paying Med/Aid the UCR, given the information was provided on HCFA Form 1500. However, the appropriateness of State Farm's previous payments is not the issue before the court; rather, the court must determine whether Med/Aid is entitled to payment at the cost-to-charge rate once State Farm was rebilled and provided with the cost-to-charge ratio in order to calculate the proper payment amount.

The law is explicitly clear regarding the proper rate of reimbursement for outpatient rehabilitation services under the MVFRL. See 31 Pa. Code §69.43(b) and discussion, *supra*. Ironically, when it was first proposed, section 69.43(b) was opposed by rehabilitation service providers who, fearing that the legal reimbursement rate would be insufficient, challenged the legality of the regulation in Commonwealth Court, seeking a declaratory judgment invalidating the regulation. The ensuing case, *Pennsylvania Association of Rehabilitation Facilities v. Foster, infra,* is the subject of three published opinions. Initially, the Pennsylvania Insurance Department's preliminary objections were considered and dismissed. *Pennsylvania Association of Rehabilitation Facilities v. Foster,* 147 Pa. Commw. 487, 608 A.2d 613 (1992) (*Foster I*). Following this, the association filed a motion for summary judgment, which was denied. *Pennsylvania Association of Rehabilitation Facilities v. Foster,* 154 Pa. Commw. 555, 624 A.2d 270 (1993) (*Foster II*). Based on the court's reasoning in denying the association's summary judgment motion, the insurance department filed its own motion for summary judgment, which was granted, thereby upholding the legality of the regulation. *Pennsylvania Association of Rehabilitation Facilities v. Foster,* 159 Pa. Commw. 428, 633 A.2d 1248 (1993) (*Foster III*).

By challenging the regulation, rehabilitation service providers, through their association, specifically requested a declaration that the law permits rehabilitation facilities to receive reimbursement for services at 80 percent of the UCR. If it had been unclear before, the Commonwealth Court clearly explained the import of section 69.43(b) when, on two occasions, it stated:

"Through promulgation of this regulation, payment for rehabilitation services was to be paid at 110 percent of actual cost rather than 80 percent of the provider's usual and customary charge." *Foster I* at 491, 608 A.2d at 615; *Foster II* at 561, 624 A.2d at 273. Subsequently, the association's petition was dismissed, and the declaratory judgment was consequently never issued. *Foster III, supra.* Thus, the clear implication arises that, following the enactment of section 69.43(b), rehabilitation facilities were no longer eligible to be reimbursed at 80 percent of UCR, as Med/Aid has been in the instant case.

Should State Farm's position prevail, it essentially would permit insurers and providers to select which of the two payment systems they prefer. Such an arrangement would subject reimbursement policy under the MVFRL to numerous variables, among them the type of form used when submitting billing statements. This would effectively undermine the authority of the Pennsylvania Insurance Commissioner, whose decision requiring the Medicare cost-to-charge billing rate for rehabilitation services has been upheld by the Commonwealth Court.

Therefore, the court concludes that, since the UCR payments made by State Farm were not authorized under the law, Med/Aid is entitled to payment at the cost-to-charge rate. Once State Farm received the updated billing information, corroborated by Med/Aid's cost-

to-charge ratio, it had the obligation to make payment, since the updated bills reflect the only rate authorized under the law for the rehabilitation services provided by Med/Aid.

Payment of benefits is due within 30 days after the insurer receives reasonable proof of the amount of the benefits. 75 Pa.C.S §1716. Thus, State Farm remitted the previously paid benefits in a timely manner, as they had not yet received reasonable proof as to the proper amount of the benefits. However, once the bills were resubmitted and the cost-to-charge ratio was provided, State Farm received reasonable proof as to the correct amount of the benefits due. Consequently, State Farm had 30 days after receipt of Med/Aid's cost-to-charge ratio to make payment of the balance due. State Farm failed to do so.

The MVFRL provides that overdue benefits, those not paid within 30 days after the proof is received by the insurer, bear interest at the annual rate of 12 percent. *Id.* The statute applies regardless of the insurer's good faith or the reasonableness of the delay. *Steppling v. Pennsylvania Manufacturers' Association Insurance Co.*, 328 Pa. Super. 419, 477 A.2d 515 (1984). Hence, State Farm will be required to pay interest on all the outstanding balances beginning 30 days from the time they received Med/Aid's revised bills and cost-to-charge ratio. Med/Aid began billing of the cost-to-charge rate in August 1994; however, State Farm produced evidence showing that it did not receive Med/Aid's cost-to-charge ratio until September 1994. Therefore, the court concludes that interest cannot accrue prior to October 1, 1994.

Lastly, Med/Aid seeks reasonable attorney's fees as authorized under the MVFRL. Attorney's fees are payable when the insurer is found to have acted in an

unreasonable manner in refusing to pay the benefits when due. *Id.* An unreasonable act is one clearly contrary to terms of the policy and to state law. *Rimpa v. Erie Insurance Exchange*, 404 Pa. Super. 287, 590 A.2d 784 (1991); *DeMichele v. Erie Insurance Exchange*, 385 Pa. Super. 634, 561 A.2d 1271 (1989). State Farm cited no terms of the policy supporting its position; it relied solely on its interpretation of the applicable insurance regulations. Given the plain language of section 69.43(b) and particularly in light of the three published decisions of the Commonwealth Court, all issued prior to Med/Aid's resubmission of corrected billing information, clearly stating that the cost-to-charge rate shall be the level of payment, this court has little choice but to conclude that State Farm's refusal to pay Med/Aid was unreasonable. Therefore, State Farm will be held liable to Med/Aid for reasonable attorney's fees.

## ORDER

In accordance with the appended opinion, the court renders a verdict in favor of the plaintiff, Med/Aid Inc., and against the defendant, State Farm Insurance Company. The court awards the following damages to the plaintiff:

(1) The sum of $6,834.77 based on the following service accounts:

| | |
|---|---|
| Eugene Gabriel | $908.32 |
| Erik Bunnell | 313.20 |
| Debra L. Carr | 255.91 |
| Kiley Cozza | 407.72 |
| Alex Haswell | 582.73 |
| Brady Hilke | 47.22 |
| Mariam Monsour | 710.01 |
| Carl Omer | 85.33 |

Diana Robinson                              2,308.20
Dorjoyre Waters                               114.50
William Cosgrove                            1,101.63

(2) Interest on the damages at the statutory rate of 12 percent per annum, commencing October 1, 1994, until July 1, 1997, in the amount of $2,255.47.

(3) Reasonable attorney's fees, in the amount of $2,145.00.