431 A.2d 953

MECHANICSBURG AREA SCHOOL DISTRICT, Appellant,

v.

Honorable Caryl M. KLINE, Secretary of Education, et al.

Supreme Court of Pennsylvania.

Argued April 27, 1981.

Decided July 8, 1981.

Richard C. Snelbaker, Mechanicsburg, for appellant.

Susan J. Forney, Dept. Atty. Gen., Harrisburg, for appellees.

Michael I. Levin, Harrisburg, Amicus Curiae for Pa. School Boards Assn.

Before ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

On May 24, 1978 appellant instituted an action in equity, deemed a petition for review in the nature of a complaint in equity, in the Commonwealth Court, seeking to enjoin the Secretary of Revenue, Secretary of Education, Auditor General and State Treasurer from paying the final installment of school subsidies for the 1977–1978 school year. Appellant also sought to compel the Secretary of Revenue to take the steps necessary to correct alleged errors in the "personal income valuation" attributed by the Secretary of Revenue to the Mechanicsburg Area School District in his certification to the Secretary of Education for use in determining the "market value/income aid" ratio[1] mandated by the Act of August 24, 1977 (Act No. 59), P.L. 199, 24 P.S. §§ 25–2501 to 2502.3 which amended the Public School Code of 1949 (Code).[2] The gravamen of Mechanicsburg's complaint is that the Secretary of Revenue erroneously included 1,084 persons in the 8,239 total of taxpayers whose incomes were attributed to the Mechanicsburg Area School District and used in computing Mechanicsburg's taxable income for subsidy purposes.[3] It was alleged that the error would result in

1. "Market value/income aid" ratio is one of several essential elements of the state subsidy formula.

2. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 1–101 *et seq.*

3. The Secretary of Revenue announced on August 26, 1977 (R.26a) the method by which income would be certified for subsidy purposes. The method included:

    1. The PA 40 (Personal Income Tax) form includes a request for school district name and code number on the first page.

    2. The income figures certified will represent data collected from the 1975 PA 40 returns. Although the Department has been compiling income tax data by school districts informally for the past several years there had not been a requirement or need to verify the data. In addition, it has been our experience that approximately 80 to 85 percent of all individuals who file a return have included a school district number.

    3. It is entirely possible that an individual may include a school code number on the return which is not correct for his or her district.

a loss of approximately $57,823.96 to appellant. The Secretary of Revenue conceded it was "entirely possible that many districts were either under or over valuated." [4]

Although the Secretary of Education had made two estimated payments based upon the anticipated subsidy determination, the final and third such payment, due June 1,[5] had not been made when appellant gave notice to appellees of the error and instituted suit for its correction. The Secretary of Education, the State Treasurer and the Secretary of Revenue filed preliminary objections to the complaint, raising the issues of failure to join indispensable parties, failure to join necessary parties and laches. On March 23, 1979, the

4. Act 59 was signed into law on August 24, 1977. It contains provisions for local school district budget "reopeners" until August 31, 1977.
5. Considering the limitations listed above, the information which we will certify this year will not be exact.
6. The Department of Revenue is considering several methods of increasing the degree of compliance as well as verifying the accuracy of information submitted.

4. ". . . [W]e are unable to adjust the income valuation of Mechanicsburg Area School District as per your request."
and
"I am taking the liberty of attaching, for your review, an explanation sheet I issued on August 26, 1977 on the method and circumstances by which income would be certified for 1977–78 subsidy purposes. Considering all the factors we listed, it is entirely possible that many districts were either under or over valuated." Letter dated March 21, 1978 from the Secretary of Revenue to the Superintendent of Mechanicsburg Area School District.

5. The amount apportioned and allotted to each school district shall be divided into three payments and the Secretary of Education shall draw his requisition three times annually upon the State Treasurer in favor of each district for the amount to which it is entitled. The first two payments shall be estimates based on but not to exceed thirty percent (30%) each of the total amount apportioned and allocated to the school district during the previous school year for the same purposes. The final payment shall be the balance of the apportionment due for the applicable school year. Payment thereof shall be made to all school districts on the first day of October, February and June. . . .
This section shall apply to payments which a school district is entitled under any provisions of section 2502, 2502.3 or 2502.4. Act of June 26, 1974, P.L. 370, No. 125, § 4, 24 P.S. § 25–2517 which amended the Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 1–101 *et seq.*

Commonwealth Court held the preliminary objections raising laches to be without merit, but dismissed the petition for review without prejudice for want of joinder of all other school districts, stating "As they [all other school districts] are not parties, we are without jurisdiction to proceed. . . . " *Mechanicsburg Area School District v. Kline, et al.,* 41 Pa.Cmwlth. 371, 375, 399 A.2d 1136, 1138 (1979). It is from the sustaining of the preliminary objections for failure to join indispensable parties that appellant appeals.

The issue joined here is whether all the other school districts of this Commonwealth are indispensable parties to the action.

█ The general rule is that "a party in an equity action is indispensable when he has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience. That is to say, his presence as a party is indispensable where his rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights." *Hartley v. Langkemp & Elder,* 243 Pa. 550, 555–556, 90 A. 402, 403 (1914). *Cf. Action Coalition of Elders v. Allegheny,* 493 Pa. 302, 426 A.2d 560 (1981); *DeLuca v. Buckeye Coal Company,* 463 Pa. 513, 345 A.2d 637 (1975); *Legman v. Scranton School District,* 432 Pa. 342, 247 A.2d 566 (1968); *Merner v. Department of Highways,* 375 Pa. 609, 101 A.2d 759. We hold that the other school districts are not indispensable parties.

The determination of an indispensable party question involves at least these considerations:

1. Do absent parties have a right or interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

■  Did the school districts, not parties to this case, have a right related to the claim?  The other school districts had a right under Sections 9 to 11 of Act 59, *supra*, to a correct and accurate determination of the amount of subsidy granted them.  This right is the same as that of appellant.  It is not one of entitlement to a determined portion of the total subsidy, but rather to a sum *to be determined* by correct computations of the Secretary of Education in accordance with the state school subsidy formula which included the use of a certified, accurate "personal income valuation" from the Secretary of Revenue.  Even a right of anticipation of a fixed amount of subsidy did not exist for any of the school districts when the complaint was filed.  The two payments made prior to May 23, 1978 were only estimates and the final payment which established the determined amount came into being the following June 1st, as mandated by the Code.  No right as to a fixed dollar amount existed in the final payment, nor did the complaint in equity deemed a petition for review request a fixed dollar amount in its prayer for relief.  The right of the other school districts was related to the claim only insofar as the right of all the school districts originated from the Code and was identical in nature.

What is the nature of the right?  It is a vested right to receive the benefit of the use of correct process by the state officials identified in the Code.  It is not a vested right to receive a fixed or determined sum of money.  It is a right not contingent upon the actualization of the rights of each school district.

■  It becomes clear that the rights of the other school districts are not "essential" to the merits of the issue of correct computation.  The "essential" test was first enunciated by Chief Justice Marshall of the United States Supreme Court in *Russell v. Clarke's Executors*, 7 Cranch. 69, 3 L.Ed. 271 (1812) where non-party assignees of a fund from which plaintiff sought payment of certain bills of exchange were held to be "so *essential* to the merits of the question, and may be so much affected by the decree, that the court

cannot proceed to a final decision of the cause, until they are parties." *Id.* at 98. [Emphasis supplied.] The concept of essentiality has been employed in this Commonwealth through the principle of *connection.* In *Hartley v. Langkamp & Elder, supra,* the Court quoted from 16 Cyc. 189:

That is to say his presence as a party is indispensable where his rights are *so connected* with the claims of the litigants that no decree can be made between them without impairing such rights. . . . [Emphasis supplied.]

That restatement of one of the crucial aspects of the traditional definition of an indispensable party has been relied on in *Scherbick v. Community College of Allegheny County,* 479 Pa. 216, 387 A.2d 1301 (1978); *Columbia Gas Transmission Corp. v. Diamond Fuel Company, et al.,* 464 Pa. 377, 346 A.2d 788 (1975); *Pocono Pines Corporation v. Pa. Game Commission,* 464 Pa. 17, 345 A.2d 709 (1975); *Tigue v. Basalyga,* 451 Pa. 436, 304 A.2d 119 (1973); *Maloney v. Glosser,* 427 Pa. 548, 235 A.2d 607 (1967); *Reifsnyder v. Pittsburgh Outdoor Advertising Co.,* 396 Pa. 320, 152 A.2d 894 (1959); *Gardner v. Allegheny County,* 382 Pa. 88, 114 A.2d 491 (1955); *Powell v. Shepard,* 381 Pa. 405, 113 A.2d 261 (1955).

Beginning with *Columbia Gas Transmission Corp. v. Diamond Fuel Company, supra,* the Pennsylvania restatement of the "essential" test was refined to include the factor of directness.

In Pennsylvania, an indispensable party is one whose rights are *so directly connected* with and affected by litigation that he must be a party of record to protect such rights, . . . .

*Id.,* 464 Pa. at 379, 346 A.2d 788. [Emphasis supplied.] A unanimous Court employed the same language in *Scherbick v. Community College of Allegheny County, supra.* While the rephrasing enhanced the accuracy of the "essential" test, in this case appellees would point our analysis away from the "essential" test by ascribing directness to the *nature* of the interest of the other districts when they argue the other school districts "have a direct interest in the

subsidy funds available for the 1977–1978 school year" and failing to address whether the right of the other school districts is *essential* to the determination of the correctness of the computation of the subsidies. Appellees would rather we examine if the right of the other school districts will be affected if the funds available for subsidy for the 1977–1978 school years will be affected. They attempt to support this confounding of the indispensable party doctrine by reference to paragraph 19 of appellant's complaint, the ceiling imposed by Section 16(a) of Act 59,[6] and an implied due process infringement on the rights of the other school districts.

Appellant's right to a correct determination of the amount of subsidy to be granted is not interlocked with the similar right possessed by other school districts. If recalculation does cause additional payment to Mechanicsburg, such payment would not necessarily require appellees to recalculate the total subsidy.[7] It is stressed that appellant averred in paragraph 19 of the complaint that "[t]he taxpayers included in the personal income valuation attributed to Plaintiff School District should be included in the personal income valuations of other districts thereby causing erroneous determinations of Market Value/Income Aid Ratios for other, and possibly all other school districts in this Common-

---

6. Section 16. (a) It is the intent of the General Assembly that under no circumstances shall the increased costs resulting from the subsidy formula changes set forth in this act, . . . exceed the sum of $100,000,000 for the 1976–1977 school year and $150,000,000 for the 1977–1978 school year and each school year thereafter over the existing costs incurred by the Commonwealth under present law. 24 P.S. § 25–2502.3 (note) (repealed July 13, 1979, P.L. 94, No. 41, § 9).

7. Section 16. (c) If the sums appropriated for any fiscal year for making payments provided in this act subject to the limitations set forth in subsection (a) are not sufficient to pay in full the total amounts to which all qualified school districts are entitled to receive under this act for such year, the allocations to such school districts, shall be proportionately reduced by the percentage of difference between the amount needed and the amount apportioned to the extent necessary to bring the aggregate of such allocations within the limits of the amount appropriated. 24 P.S. § 25–2502.3 (note) (repealed July 13, 1979, P.L. 94, No. 41 § 9).

wealth." The Commonwealth Court deemed the averment an apparent concession of direct impact by the litigation on all other school districts. We need not concern ourselves with the defects of that syllogism for its conclusion of a concession leads nowhere. It is solely within the province of the court to decide the issues of direct connection or essentiality, and possible due process infringement.[8]

Since the right of a correct computation possessed by the other school districts is not interlocked with appellant's right to a correct computation, and a recalculation with possible additional payment to appellant, in itself, does not require a recalculation of the total school subsidy, the rights of the other school districts are not essential to a decision on the merits of the issues.

The ceiling set forth in Section 16(a) of Act 59 is used by appellees as a basis of an implied due process infringement argument. They urge, *ipse dixit*, the action of appellant automatically affects the subsidy payment of other school districts without providing those districts an opportunity to protect their rights as parties. Appellees would have us find, as did the Commonwealth Court, that a recalculation of Mechanicsburg's subsidy would "*necessarily produce a ripple effect upon the subsidies calculated and paid to all school districts because of the limitations imposed by Act 59.*" [Footnote omitted.] *Mechanicsburg Area School District v. Kline, et al.*, 41 Pa.Cmwlth. at 375, 399 A.2d at 1137. First, the concept of a ripple effect is misplaced in this appeal as the record fails to establish a) that the ceiling had in fact been reached or b) that the requested adjustment would cause the ceiling to be reached.[9] Inasmuch as there is no such averment, there can be no assumption that a recalculation of Mechanicsburg's subsidy will affect that which is

**8.** All the considerations enumerated *infra* are themselves conclusions of law to be made by the court after due consideration. Bare factual allegations of a party are not dispositive of the issues underlying the indispensable party question.

**9.** While Section 16 of Act 59 imposed a dollar ceiling on moneys that could be paid out for school subsidies, it did not require the total subsidy for each school year to equal the maximum dollar amount.

received by any other unit. Moreover, even if the ceiling had been reached and other districts were affected as a result of the recalculation, such would not make them indispensable parties. The other school districts are not entitled to benefit from any error that may have been made in the calculation. Therefore, the argument of an implied due process infringement on the rights of the other school districts is devoid of merit.

It has been held for more than 175 years that if the merits of a case can be determined without prejudice to the rights of necessary parties,[10] absent and beyond the jurisdiction of the court, the court will proceed without them. *Legman v. Scranton School District, supra; Gardne v. Allgheny County, supra. Cf. Shields v. Barrow*, 58 U.S. (17 How.) 130, 15 L.Ed. 158 (1854); *Mallow v. Hinde*, 25 U.S. (12 Wheat.) 197, 6 L.Ed. 599 (1827); *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 167, 6 L.Ed. 289 (1825); *Cameron v. M'Roberts*, 16 U.S. (3 Wheat.) 591, 4 L.Ed. 467 (1818); *Morgan's Heirs v. Morgan, et al.*, 15 U.S. (2 Wheat.) 290, 4 L.Ed. 242 (1817); *Russell v. Clarke's Executors*, 7 Cranch. 69, 3 L.Ed. 271 (1812); *Joy v. Wirtz*, 13 Fed. Cas. 1172 (No. 7554) (C.C.D. Pa. 1806).

The distinct cause of action asserted by appellant is founded on its lawful statutory right to receipt of a correctly computed subsidy payment. We see no reason why the cause cannot be litigated and decided without impairing the lawful rights of the other school districts. To sustain the preliminary objection of failure to join an indispensable party would be inequitable and unjust.

Accordingly, the Order of the Commonwealth Court is reversed and the complaint reinstated.

O'BRIEN, C. J., and WILKINSON, J., did not participate in the consideration or decision in this case.

ROBERTS and FLAHERTY, JJ., concurred in the result.

10. The issue of necessary parties was not ruled upon by the Commonwealth Court and is not a part of this appeal.