572 A.2d 737

MARITRANS G.P., INC., Maritrans Partners, L.P. and Maritrans Operating Partners, L.P.

v.

PEPPER, HAMILTON & SCHEETZ and J. Anthony Messina, Jr., Esquire, Appellants.

MARITRANS G.P., INC., Maritrans Partners, L.P. and Maritrans Operating Partners, L.P.

v.

PEPPER, HAMILTON & SCHEETZ and J. Anthony Messina, Jr., Esquire. Appeal of of Moran Towing & Transportation Company, Inc., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 12, 1989.

Filed March 29, 1990.

**156**

Stephen Gillers, New York City, Ralph W. Brenner and Francis P. Newell, Philadelphia, for appellant (at 1204).

Richard Sprague, Philadelphia, for appellee (at 1204 and 1564).

Arthur G. Raynes, Philadelphia, for Messina, appellee (at 1564).

Before BROSKY, WIEAND and JOHNSON, JJ.

JOHNSON, Judge:

Pepper, Hamilton & Scheetz (Pepper), a Philadelphia based law firm, appeals the order granting injunctive relief to Maritrans G.P., Inc., Maritrans Partners, L.P. and Maritrans Operating Partners, L.P.'s (Maritrans), a Philadelphia based transportation company. The preliminary injunction enjoins Pepper's legal representation of seven New York based transportation companies. Moran Towing & Transportation (Moran), one of the New York transportation companies, appeals the order denying its petition to intervene in the action between Pepper and Maritrans. By order of September 13, 1989, Pepper's appeal at docket No. 1204 Philadelphia 1989 has been consolidated with Moran's appeal at docket No. 1564 Philadelphia 1989, and therefore both appeals are addressed in this decision.

We decide two questions on this appeal. First, we decide that the court erred by issuing a preliminary injunction based upon Pepper's alleged violation of the Rules of Professional Conduct without making any independent finding that Pepper's conduct was actionable. Second, we deter-

mine that Moran was not an indispensable party to the Pepper/Maritrans action and that the court did not err by denying Moran's petition to intervene.

From 1975 to December 1, 1987, Pepper represented Maritrans in labor matters. From 1986 through December 1, 1987 Pepper also represented Maritrans in certain corporate and securities matters. J. Anthony Messina, a Pepper partner and head of its labor division, was primarily responsible for Pepper's representation of Maritrans in labor negotiations.

Sometime in 1987, Maritrans learned that Pepper was representing five other New York based marine transportation companies in negotiating labor agreements with Local 333 of the International Longshoremen's Association. Two other New York based marine transportation companies became clients of Pepper in January, 1988. Maritrans objected strenuously to Pepper's representation of the New York companies because it considered these companies competitors of Maritrans. Maritrans reasoned that, by virtue of Pepper's dual representation, the New York companies were in a position to acquire confidential, damaging information from Pepper regarding Maritrans.

Pepper and Maritrans attempted to reach an amicable agreement permitting Pepper to continue its representation of both Maritrans and the New York companies. However, on December 2, 1987, Pepper concluded that negotiations had been unsuccessful and notified Maritrans that it was discontinuing its representation. On February 2, 1988, Maritrans filed a complaint alleging the Misappropriation of Trade Secrets, Breach of Contract and Breach of Fiduciary Duty and praying for preliminary injunctive relief and money damages. Maritrans' request for preliminary injunctive relief was denied by order of February 9, 1988. Maritrans appealed from that ruling and during pendency of that appeal filed an amended complaint in the trial court alleging additional counts of Breach of the Duties Owed By An Attorney to His Client, Deceit and Constructive Fraud, and Legal Malpractice. Maritrans prayed for money damages

and special injunctive relief. After amending its complaint in the trial court, Maritrans withdrew its appeal.

On April 21, 1989, following a hearing on Maritrans' motion for special injunctive relief, the court delivered a bench opinion denying that relief. On April 26, 1989, before filing an order regarding its April 21, 1989 decision, the court reconvened the parties and delivered a second bench opinion reversing its initial determination and granting a preliminary injunction. Since the court stated in its second opinion that its findings of fact from the April 21, 1989 bench opinion remained essentially intact, N.T. dated April 26, 1989 at 5, we regard those findings as the basis of the court's second bench opinion to the extent that those findings are not explicitly contradicted in the later opinion.

The court's order of a preliminary injunction, consistent with the court's April 26, 1989 bench opinion, was filed on May 1, 1989. On May 5, 1989, Pepper filed a Motion for Clarification of the court's preliminary injunction order. On May 9, 1989, Pepper appealed from the preliminary injunction order. On May 15, 1989, after Pepper appealed the court's preliminary injunction order, the court responded to Pepper's first motion for clarification by issuing a second order, purporting to amend its initial order of preliminary injunction. On June 6, 1989, Pepper filed a second Motion for Clarification of the preliminary injunction order, to which the court issued a second amending order on July 7, 1989. Pepper did not file succeeding notices of appeal. Maritrans moved to quash Pepper's pending appeal on the ground that the superior court lacked jurisdiction and for violation of the Pennsylvania Rules of Appellate Procedure. Each of Maritrans' motions was denied without prejudice to renew these arguments before this court. We dispose of these two preliminary matters first.

■ We do not find that our review has been hindered by any of the alleged violations of the Pennsylvania Rules of Appellate Procedure which Maritrans' identifies and therefore we exercise our discretion not to quash the appeal on

this ground. *See O'Neill v. Checker Motors Corp.*, 389 Pa.Super. 430, 433–437, 567 A.2d 680, 681–682 (1989).

Next, Maritrans contends that the court's issuance of two orders, dated May 15, 1989 and July 7, 1989 respectively, which purported to amend the court's May 1, 1989 preliminary injunction order rendered Pepper's initial notice of appeal inoperative. Maritrans argues that the trial court's amending orders were in fact orders granting reconsideration of its preliminary injunction. Since no subsequent notice of appeal was filed within 30 days of the second amended order of July 7, 1989, Maritrans contends that Pepper's appeal is untimely and thus, this court is restricted from considering the appeal's merit.

We have reviewed the orders of May 15, 1989 and July 7, 1989. It is clear from the face of each order that the trial court did not grant reconsideration of the preliminary injunction. These subsequent orders simply clarify the scope of the preliminary injunction, thereby preventing any inadvertent violations of the preliminary injunction. Only the trial court's grant of a motion for reconsideration invalidates a preceding notice of appeal. *See generally*, Pa.R. A.P. 1701(b). Since the court has not granted a motion for reconsideration, our jurisdiction over this appeal has not been impeded.

On appeal, Pepper asks us to consider whether the court's order of a preliminary injunction was proper in the absence of any showing by Maritrans that the conditions required for the issuance of an injunction were satisfied.

It is well established that a preliminary injunction may issue only where the court finds that *each* essential prerequisite has been satisfied. *Beck Computing Service v. Anderson*, 362 Pa.Super. 505, 524 A.2d 990 (1987). These prerequisites are as follows: 1) the activity to be restrained is actionable; 2) there exits immediate and irreparable harm which cannot be compensated by damages; 3) greater injury will result by denying the injunction than by granting it; 4) the granting of an injunction will restore the parties to

their positions immediately prior to the alleged wrongful conduct; and 5) an injunction is reasonably suited to abate the wrongful conduct. *Beck Computing Service v. Anderson*, 362 Pa.Super. at 508, 524 A.2d at 991–992.

> [A] preliminary injunction is an extraordinary remedy, and the trial court's power to enter such an injunction should be exercised only after careful deliberation has resulted in the conclusion that such relief is a necessity.

*Id.*

■ On appeal, we review the trial court's order to determine whether the rule relied upon for the issuance of an injunction was palpably erroneous or misapplied, or whether any ground exists to support the order. *Willman v. Children's Hospital of Pittsburgh*, 505 Pa. 263, 269, 479 A.2d 452, 454–455 (1984).

■ Of the several requirements for an injunction, the most important is whether the alleged wrongful conduct is actionable. *New Castle Orthopedic Associates v. Burns*, 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978); *Leonard v. Thornburgh*, 75 Pa.Cmwlth. 553, 558, 463 A.2d 77, 80 (1983). The trial court is required to make a threshold finding that there is a probability that the party seeking an injunction will succeed on the merits of its claim. *Id.* Here, the trial court's presumed finding of actionable conduct necessarily relies solely upon Pepper's purported breach of the duty of confidentiality to Maritrans. At trial, Maritrans alleged that Pepper violated its ethical duties by: 1) representing clients with conflicting interests; 2) disclosing to their prior Pepper attorney, Messina, confidential information after explicitly agreeing not to do so; and 3) disclosing other confidential information to Pepper's competitors. On appeal, Maritrans argues that the court's reliance upon these alleged violations under the Rules of Professional Conduct is not error and that a violation of the Rules is a proper consideration in determining whether actionable conduct exists.

Each alleged act or course of misconduct by Pepper supposedly occurred in or began in 1987, and at the latest in January 1988. On February 27, 1974, the Supreme Court of Pennsylvania adopted the Code of Professional Responsibility. Code Prof.Resp., 42 Pa.C.S. The Code which sets forth standards for attorney conduct was effective from February 27, 1974 thru May 31, 1988 when it was superceded by the Rules of Professional Conduct, adopted on October 16, 1987 but not effective until April 1, 1988. Rules Prof.Conduct, 42 Pa.C.S. Misconduct occurring on or before March 31, 1988 is governed by the Code of Professional Responsibility. Code Prof.Resp., Supersedure, 42 Pa.C.S.; Rules Prof.Conduct, 42 Pa.C.S. Since the conduct alleged by Maritrans, and that considered by the court, began prior to March 31, 1988, such alleged misconduct is properly considered under the Code. We assume *solely* for the purpose of discussion that both the Code and the Rules were in some manner violated in order to reach the primary issue on this appeal, whether a violation of the disciplinary rules is a proper consideration in determining whether an injunction should issue. The question of whether either the Code or the Rules were actually violated is in no way decided by this opinion.

The Preliminary Statement to the Code of Professional Responsibility states:

The Code makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct.

Our courts have endorsed this position. In *In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984), our supreme court rejected the argument that an attorney's failure to govern himself or herself by the standards set forth in the Code of Professional Responsibility, standing alone, would be sufficient to create a cause of action. *In re Estate of Pedrick*, 505 Pa. at 535, 482 A.2d at 217 (plurality decision: two of seven justices concurring and two justices dissenting on other grounds). Recognizing that the code was used in

the closely circumscribed situation in which disqualification of an attorney was necessary to ensure a fair trial, the supreme court observed that its decision not to extend this practice was consistent with both its constitutional duty to discipline attorney conduct *and* the Preamble to the Model Rules of Professional Conduct which were then under review for adoption in this Commonwealth.

In *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985), the supreme court, with mention of the Code of Professional Responsibility and *Pedrick, supra,* observed that neither the Code of Judicial Conduct nor the Code of Professional Responsibility permit:

> the trial courts or the intermediate appellate courts to alter the rules of law, evidentiary rules, presumptions or burdens of proof. More importantly, violations of those Codes are not a proper subject for consideration of the lower courts to impose punishment for attorney or judicial misconduct.

*Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. at 219–220, 489 A.2d at 1299. If the Code were used to establish actionable conduct, such an effort would in effect alter the rules of law in this Commonwealth. The violation of a lawyer's ethical duty of confidentiality has not, heretofore, been recognized as an independent cause of action. Thus, sole reliance upon the Code to establish actionable conduct for the purpose of issuing a preliminary injunction would be improper.

Here, the trial court does not consider the Code which was in effect at the time the alleged conduct began. Rather, the court discusses the applicability of the Rules of Professional Conduct. Although the court apparently recognized that the Rules could not be the basis for a preliminary injunction when initially denying Maritrans' motion, *see* N.T. dated April 21, 1989 at p. 6, it abandoned this position entirely, instead relying upon a violation of these rules, principally Rule 1.7 and Rule 1.9, in justifying its issuance of a preliminary injunction.

■ The court states in its opinion of April 26, 1989 that it reconsidered its ruling of April 21, 1989 because it did not fully appreciate the relationship between attorney and client. N.T. dated April 26, 1989 at p. 8. The court then embarked upon an analysis of whether Pepper had breached its duty of confidentiality to Maritrans under Rules 1.7 and 1.9. In so doing, the court relied upon the application of the substantial relationship test used in disqualification actions to establish that a substantial relationship existed between Pepper's representation of the New York companies and Pepper's representation of Maritrans, and therefore Pepper was *presumed* to have information which could be used to Maritrans' disadvantage. N.T. dated April 26, 1989 at 16. Under the substantial relationship test, this presumption is not rebuttable. *Richardson v. Hamilton International Corp.*, 333 F.Supp. 1049, 1053 (E.D.Pa.1971), aff'd 469 F.2d 1382 (3rd Cir.1972), cert. denied, 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973) *quoting Fleischer v. A.A.P., Inc.*, 163 F.Supp. 548, 552 (S.D.N.Y.1958). The court discussed further that given this presumption, it was uncertain whether it was permitted to even consider the present-day importance of the information that Pepper was presumed to possess, N.T. dated April 26, 1989 at 16. The court concluded:

> *Maritrans' clear right to relief is based on the fact that Pepper had established an attorney-client privilege or a relationship with Maritrans which was substantially related to its representation of competitors in the New York Harbor.* Pepper violated an admitted commitment not to disclose information to Messina. The irreparable harm to Maritrans is apparent in the confidential information *presumed* to be within Pepper's knowledge, and which this Court further found to be of value to competitors.

[Emphasis added]. N.T. dated April 26, 1989 at 20.

■ The court's reliance upon the Rules to support its theory that Pepper's conduct was actionable was plainly error. Just as the Code may not be used to augment the

substantive law of this Commonwealth, neither may the Rules be used to create actionable conduct. The Scope of the Rules directs that a violation of its provisions:

> *should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached.* The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be the basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, *nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.*

[Emphasis added]. Rules of Professional Conduct, Scope, 42 Pa.C.S.

The "right to relief" that the court has constructed to satisfy the first requirement for the issuance of a preliminary injunction is neither implied by law nor was it a material part of Pepper's agreement to provide Maritrans with advice, counsel, and representation in labor relations matters. By relying upon the Rules of Professional conduct to establish a right to relief, the court essentially used the rules to give rise to a cause of action, improperly *augmenting* the substantive law in this Commonwealth. The issuance of an injunction on this basis was palpably erroneous.

Our independent review of the record reveals no basis upon which a preliminary injunction could have been issued. Throughout this litigation, Maritrans has attempted to equate legal duty with professional responsibility. *See* Maritrans' Amended Complaint at pp. 24, 26–27, 29, 31–32, 34–35, 37–38. As explained, a violation of the disciplinary

rules of this Commonwealth does not give rise to a cause of action, although it may properly be the focus of disciplinary action by the Supreme Court of Pennsylvania. Thus, a probability of success on the merits of Maritrans' complaint did not exist. Maritrans has failed to show that Pepper's conduct was actionable, and in the absence of this showing, an injunction was improper.

Contemporaneous with Pepper's appeal seeking relief from the court's preliminary injunction order, litigant Moran petitions this court to be made an indispensable party to the action between Pepper and Maritrans. On May 4, 1989, after the court's entry of the preliminary injunction order, Moran petitioned the court for leave to intervene. The Honorable Abraham J. Gafni denied this petition on May 10, 1989. On May 12, 1989, Moran filed in this court an emergency application for an order permitting intervention and staying the preliminary injunction pending appeal of the trial court's preliminary injunction order which was denied without prejudice to present those arguments before this court. On appeal, we conclude that Moran is neither an indispensable party to the Pepper/Maritrans litigation nor should Moran have been permitted to intervene.

█ Moran contends that because the preliminary injunction prevents Pepper from representing Moran, Moran has an interest which is affected by the Pepper/Maritrans litigation, and therefore Moran is an indispensable party. In an equity action, a party is considered indispensable where:

[H]e has such an interest that a final decree cannot be made without affecting it, or leaving the controversy in such a condition that a final determination may be wholly inconsistent with equity and good conscience. That is to say, *his presence as a party is indispensable where his rights are so connected with the claims of the litigants that no decree can be made between them without impairing such rights."* Hartley v. Langkamp & Elder, 243 Pa. 550, 555–556, 90 A. 402, 403 (1914).

*Mechanicsburg Area School District v. Kline,* 494 Pa. 476, 481, 431 A.2d 953, 956 (1981). [Emphasis added]. In evalu-

ating whether a litigant is indispensable to the proceeding, we must consider:

1. Do absent parties have a right or interest related to the claim?
2. If so, what is the nature of that right or interest?
3. Is that right or interest essential to the merits of the issue?
4. Can justice be afforded without violating the due process rights of absent parties?

*Id.*

The preliminary injunction preventing Pepper from representing the New York companies in collective bargaining negotiations does not prevent Moran from seeking other counsel. Thus, the interest sought to be protected is not just the right to legal representation, for this right is unaffected by the court's order. Rather, Moran seeks to protect its "right" to representation by the counsel of its choice, Pepper. Moran concedes that to the extent that Maritrans has requested money damages, Moran is not an indispensable party. Moran brief at 6.

 There is no unfettered right to counsel of choice. *See, e.g., Kramer v. Scientific Control Corp.,* 534 F.2d 1085, 1093 (3d Cir.1976) *citing United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3rd Cir.1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970). In fact, Moran would not be able to compel the specific performance of its agreement with Pepper had Pepper voluntarily chosen to cease its representation of Moran. *McMenamin v. Philadelphia Transportation Co.,* 356 Pa. 88, 51 A.2d 702 (1947); Restatement (Second) of Contracts § 367(1). Any harm which Moran would incur by losing Pepper as counsel would be merely compensable in money damages. Moran's ability to secure such relief has not been affected in the least by the preliminary injunction. Thus, Moran's due process rights are unaffected by the preliminary injunction.

In addition, Moran's interest in retaining the counsel of its choice is not directly connected to the merits of this case.

Rather than focus, as Moran suggests, upon the directness of Moran's interest to ultimate determination that Pepper may no longer render collective bargaining representation to the New York companies, this court must consider whether Moran's interest in being represented by Pepper is directly related to the issue before the court, whether Pepper has breached a duty owed to Maritrans' that is properly rectified by a preliminary injunction. *See Mechanicsburg Area School District v. Kline,* 494 Pa. at 483–484, 431 A.2d at 957–958. From this vantage, Moran's interest is remote. Moran's participation in this litigation is not necessary to a determination of whether Pepper breached its legal duties to Maritrans.

The cases upon which Moran relies for the proposition that it must be considered an indispensable party are clearly distinguishable. *Borough of Wilkinsburg v. Horner,* 88 Pa.Cmwlth. 594, 490 A.2d 964 (1985) involved a refuse collector's ability to continue to render its contracted service to the borough when the propriety of the collector/borough contract was challenged by a taxpayer. *Posel v. Redevelopment Authority of Philadelphia,* 72 Pa.Cmwlth. 115, 456 A.2d 243 (1983) involved a landowner's property right to a parcel of land where redevelopers sought to enjoin the parcel's sale because it was allegedly in violation of the urban renewal plan. In each case, the party attempting to intervene had a right to the performance of the contract and that right would have been directly affected by the litigation. Since Moran neither possesses an interest affected by the Pepper/Maritrans litigation which is specifically enforceable, nor is Moran's participation at trial essential to a determination of whether Pepper violated a legal duty owed to Maritrans, Moran is not indispensable to the Pepper/Maritrans litigation.

Further, we find that Judge Gafni that did not abuse his discretion by denying Moran's petition to intervene permissively as provided by Pa.R.C.P. 2327(4). The reason for Judge Gafni's denial of Moran's petition is evident from the court's May 5, 1989 order denying the peti-

tion to intervene by five other New York companies. In that order, Judge Gafni considered the petition of the five companies, filed after the entry of an adverse judgment, untimely because each company was fully aware of the proceedings, and in fact representatives of two companies were witnesses in the proceedings.

Rule 2327(4) does not create a right of intervention but rather sets forth the only circumstances in which intervention will be permitted. It provides in pertinent part:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, *subject to these rules* if

. . . .

(4) the determination of such action may affect any legally enforceable interest of such person whether or not he may be bound by a judgment in the action.

Pa.R.C.P. § 2327. Rule 2327 is subject to Pa.R.C.P. § 2329 which sets forth those instances in which the court may justifiably refuse intervention to a litigant proceeding under Rule 2327. Rule 2329 provides:

Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if

. . . .

(2) the interest of the petitioner is already adequately represented; or

(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

Pa.R.C.P. § 2329.

A representative of Moran participated in the Pepper/Maritrans litigation, the precise conduct which Judge

Gafni identified as showing that two of the five other New York companies were aware of the Pepper/Maritrans litigation well before the conclusion of the hearing and that therefore those companies' petition to intervene was untimely. With full knowledge of the twenty-seven day hearing on Maritrans' motion for special relief, Moran waited until after a preliminary injunction was granted before petitioning the court to intervene. Just as the petition of the five other New York companies was untimely, Moran's petition was untimely. When a petition for intervention is untimely and the proposed intervenor's interests are adequately represented by the parties of record, the court may deny intervention. Rule 2329(2) and (3); *Jackson v. Hendrick*, 498 Pa. 270, 446 A.2d 226 (1982).

Moran's reliance on *Ackerman v. North Huntingdon Township*, 425 Pa. 194, 228 A.2d 667 (1967) for the proposition that it need not petition the court to intervene until after the rendering of an adverse judgment is misplaced. In that case, our supreme court held that denial of intervention was error where the intervenor reasonably relied upon a party defendant to protect its interests *and* where, after the party defendant lost its case, it failed to challenge the decision by the filing of exceptions.

Here, Moran's interests remain expertly marshalled. In fact, Moran's appellate brief relies entirely upon Pepper's analysis to challenge the propriety of the injunction, adding only its argument that the failure to join Moran as an indispensable party deprived the court of jurisdiction to issue an injunction. *See* Moran's brief at 12. Because Moran's petition could be viewed as untimely and because Moran's interest in continuing to be represented by the counsel of its choice, was, and continues to be, effectively represented by Pepper, Judge Gafni did not abuse his discretion in denying Moran's petition to intervene. *See Wilson v. State Farm Mutual Automobile Ins. Co.*, 512 Pa. 486, 517 A.2d 944 (1986). We do not reach Moran's contention that the trial court did not have jurisdiction to

issue a preliminary injunction because it failed to join Moran as an indispensable party.

For the foregoing reasons, we affirm the trial court's May 10, 1989 order denying Moran's petition to intervene. We reverse the trial court's May 1, 1989 order granting Maritrans' Motion for Special Injunction, thereby also nullifying the trial court's subsequent amending orders of May 15, 1989 and July 7, 1989.

Order of May 10, 1989 affirmed. Order of May 1, 1989 reversed.

WIEAND, J., concurs in the result.