J-A04036-15

2015 PA Super 123

| | | |
|---|---|---|
| EVELYN H. BASTIAN, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARILYN Y. SULLIVAN, RUSSELL W. | : | |
| REES, AND PAUL F. REES, | : | |
| | : | |
| Appellants | : | No. 1041 WDA 2014 |

Appeal from the Order Entered May 21, 2014
in the Court of Common Pleas of Potter County,
Civil Division, at No(s): 190 cv 2013

BEFORE:   BOWES, OLSON, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:                FILED: May 22, 2015

Marilyn Y. Sullivan, Russell W. Rees, and Paul F. Rees (Appellants) appeal from the order entered on May 21, 2014, which granted summary judgment in favor of Evelyn H. Bastian (Bastian) and against them.[1]  We affirm.

This case involves oil, gas, and mineral rights (OGMs) for the subsurface estates of several parcels of property located in Potter County, Pennsylvania.  The following facts are uncontested.

In 1921, Henry Wolz acquired three parcels of real estate in Potter County.  In 1951, after the death of his wife, Henry Wolz conveyed these

---

[1] That order also denied Appellants' motion for summary judgment against Bastian.

*Retired Senior Judge assigned to the Superior Court.

three parcels to Birdella R. Haskins. On July 20, 1951, Haskins conveyed these three parcels to Henry Wolz, Carlton H. Wolz, and Eva Wolz Hunt as joint tenants with the right of survivorship (JTWROS). After the death of Henry Wolz, 39.5 acres of this land were conveyed by Carlton H. Wolz and Eva Wolz Hunt, and each of their spouses, to Joseph W. Sykora. That deed contained the following language with respect to subsurface estate: "EXCEPTING AND RESERVING, nevertheless, all of the oil, gas and minerals in, on or under said property together with the necessary and convenient rights of entry and re-entry for the purposes of recovering the same." Deed from Carlton Wolz and Eva Wolz Hunt to Sykora, 7/29/1954.

On May 14, 1955, Eva Wolz Hunt and her husband conveyed three parcels of land, approximately 12 acres, to Carlton Wolz and his wife. That deed contained the following language with respect to the subsurface estate:

> EXCEPTING AND RESERVING, nevertheless, to Eva Wolz Hunt and Carlton Wolz all of the oil, gas and minerals in, on or under said property together with the necessary and convenient rights of entry and re-entry for the purposes of recovering the same. This deed is made under the Uniform Interparty Act for the purpose of creating a tenancy by the entireties in the above described parcels of land in the grantees.

Deed, 5/14/1955.

On March 26, 1955, Carlton Wolz and Eva Wolz Hunt, along with their spouses, conveyed 25.3 acres of the original Henry Wolz property to Theodore Menken and Clara Menken. That deed contained the following language with respect to the subsurface estate:

> EXCEPTING AND RESERVING, nevertheless, from the above described property all of the oil, gas and minerals in, on or under said property together with all storage rights and such rights of entry and re-entry as may be necessary and convenient for carrying out the terms of the excepting reservation.
>
> Any surface damage caused by the development of the above exception and reservation shall be paid to the grantees, their heirs or assigns.

Deed, 3/26/1955.

Carlton Wolz died on March 10, 1959; Eva Wolz Hunt died on January 6, 1985; and, Carlton's wife, Marguerite Wolz, died on June 7, 1985. Bastian is the heir of Eva Wolz Hunt and claims title to the subsurface estate for the entire original Henry Wolz property. Appellants are the heirs of Marguerite Wolz and claim title to the subsurface estate for fifty percent of that property.

On August 7, 2006, Appellants entered into an oil and gas lease for that half interest with Anadarko E&P Company, LP (Anadarko). That lease provided, *inter alia*, that the lessor had "full title to the premises and to all the oil and gas therein at the time of granting this Lease." Lease, 8/7/2006, at 4. On August 30, 2011, Bastian leased 100 percent of the oil and gas in the subsurface estate to Victory Energy Corporation (Victory).[2]

On May 10, 2013, Bastian filed a complaint against Appellants with counts for declaratory judgment, quiet title, and special injunctive relief. On

---

[2] That lease is not contained in the certified record.

- 3 -

June 26, 2013, Appellants filed an answer, new matter, and counterclaim, asserting counts for quiet title and declaratory judgment. After the close of pleadings, on December 19, 2013, Bastian filed a motion for summary judgment. Appellants filed a cross-motion for summary judgment on January 10, 2014. The trial court heard argument on these motions, and on May 21, 2014, the trial court granted Bastian's motion for summary judgment and declared Bastian the exclusive owner of the subsurface estate on the property. The trial court denied Appellants' motion for summary judgment.

Appellants timely filed a notice of appeal, and both Appellants and the trial court complied with Pa.R.A.P. 1925. Appellants set forth the following questions for our review.

> 1. Did the [trial court] have subject matter jurisdiction in this equity action which included a claim for declaratory judgment in the absence of two indispensable parties?
>
> 2. Did the [trial court] err in concluding that the joint tenancy with the right of survivorship was not severed by the acts of the joint tenants?
>
> 3. Did the [trial court] err in concluding that Carlton Wolz and Eva Wolz Hunt held the reserved oil, gas and mineral rights as joint tenants with the right of survivorship?

Appellants' Brief at 2.

We first consider Appellants' indispensable party issue as it implicates this Court's jurisdiction. The trial court concluded that this issue was waived, "as it was not previously raised before" the trial court. Trial Court

- 4 -

Opinion, 7/17/2014, at 2.[3] However, it is well-settled that "[t]he issue of the failure to join an indispensable party cannot be waived." ***Sabella v. Appalachian Dev. Corp.***, 103 A.3d 83, 90 (Pa. Super. 2014) (internal quotations omitted). Accordingly, we address this issue on appeal.

Because the question of whether a court has subject matter jurisdiction is a question of law, our standard of review is *de novo* and the scope of our review is plenary. ***Mazur v. Trinity Area School District***, 961 A.2d 96, 101 (Pa. 2008).

Our Supreme Court has previously determined:

> [U]nless all indispensable parties are made parties to an action, a court is powerless to grant relief. Thus, the absence of such a party goes absolutely to the court's jurisdiction. A party is indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. A corollary of this principle is that a party against whom no redress is sought need not be joined. In this connection, if the merits of a case can be determined without prejudice to the rights of an absent party, the court may proceed.

***Sprague v. Casey***, 550 A.2d 184, 189 (Pa. 1988) (internal citations omitted).

The determination of an indispensable party question involves the following considerations:

> 1. Do absent parties have a right or interest related to the claim?

---

[3] The trial court was incorrect in this regard. This issue was raised during the argument on summary judgment. N.T., 4/24/2014, at 5-6.

- 5 -

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Mechanicsburg Area School District v. Kline*, 431 A.2d 953, 956 (Pa. 1981).[4]

Appellants argue that both Victory and Anadarko are indispensable parties to this action because their leases would be affected by the outcome of this case. "It was certain that any judgment entered on the [motions for summary judgment] would either declare Anadarko's lease void or reduce Victory's lease by half." Appellants' Brief at 10. Bastian responds that the crux of the aforementioned test is "whether or not the rights of the other

---

[4] We recognize that both the complaint and counterclaim asserted claims for declaratory judgment, and Appellants argue that we must consider the following provision of the Declaratory Judgments Act in our analysis:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party and shall be entitled to be heard.

42 Pa.C.S. § 7250(a). Appellants' Brief at 10. However, looking to the substance of both the complaint and counterclaim, the count for declaratory judgment does not state any specific averments not contained already in the quiet title count. Accordingly, we analyze this issue as a quiet title action only.

party are 'essential' to the merits of the case." Bastian's Brief at 4. Bastian contends that the "lessee gas companies have no direct essential interest with regard to title so as to prevent justice from being effectuated among the litigants." *Id*. at 6.

With respect to the aforementioned test, there is no question that both Victory and Anadarko have a "right or interest related to the claim." *Mechanicsburg*, 431 A.2d at 956. We agree with Bastian, though, that the key issue to resolve is whether that right is "essential to the merits" of the case. *Id*. If Appellants did not own half of the subsurface estate, then they could not lease it to Anadarko. Similarly, if Bastian did not own the whole subsurface estate, but only owned half, she could only lease half to Victory. Neither Victory nor Anadarko has any right separate and apart from Bastian or Appellants. Accordingly, the parties that have positions essential to the case are Appellants and Bastian. Therefore, we hold that neither Anadarko nor Victory is an indispensable party in this case, and the trial court had jurisdiction to entertain the matter.

We now turn to the merits of this case. Appellants set forth a series of arguments as to how the trial court erred in interpreting the deeds at issue. We consider Appellants' issues mindful of our well-settled review of orders granting summary judgment.

> [O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court.... An appellate court may reverse the entry of a summary judgment

only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Ralston v. Ralston***, 55 A.3d 736, 739 (Pa. Super. 2012) (internal quotations and citations omitted).

We first point out that "Pennsylvania recognizes three discrete estates in land: the surface estate, the mineral [or subsurface] estate, and the right to subjacent (surface) support. Because these estates are severable, different owners may hold title to separate and distinct estates in the same land." ***Pennsylvania Servs. Corp. v. Texas E. Transmission, LP***, 98 A.3d 624, 629 (Pa. Super. 2014) (citations omitted). The trial court defined the issue in this case as "whether the subsequent conveyances of the surface estates extinguished subsurface survivorship rights held by Carlton Wolz and Eva Wolz Hunt following the death of Henry Wolz." Trial Court Opinion, 5/21/2014, at 7. The trial court went onto analyze these conveyances.

It is clear that the original conveyance to Mr. Wolz and his two children through a straw person[, Birdella Haskins,] was a

conveyance of [JTWROS] and this is not disputed by [Appellants]. Said conveyance was for land approximately 75 acres in size. Henry Wolz died within seven months [and] his children had conveyed 39.5 acres to Sykora and excepted and reserved the underlying subsurface [OGMs]. The Sykora conveyance was followed by a conveyance of 12.03 acres to Carlton Wolz and his wife as tenants by the entirety, with a similar exception and reservation clause. Carlton Wolz, Eva Wolz [Hunt,] and their spouses then conveyed 25.3 acres to the Menkens with, once again, an exception and reservation clause. Subsequently, Carlton Wolz died in 1959 while Eva Wolz Hunt lived until January 6, 1985.

*Id*. at 7-8 (footnote omitted).

Appellants contend that the "JTWROS was severed by the joint act of both joint tenants when the Sykora, Menken and Wolz Deeds were executed and delivered." Appellants' Brief at 13. They argue that these deeds "clearly evidence the breakage of at leas[t] three of the unities[;] time, title, and interest[;]" thus, the execution of these deeds converted the JTWROS of Carlton Wolz and Eva Wolz Hunt into a tenancy in common. *Id*. at 17. Specifically, Appellants point to the fact that Carlton Wolz and Eva Wolz Hunt included their respective spouses as grantors. The trial court disagreed and concluded that "[t]here is no indication in any of the deeds that the grantors intended to terminate the [JTWROS] estate." Trial Court Opinion, 5/21/2014, at 8. We agree with the trial court.

When two or more persons hold property as [JTWROS], title to that property vests equally in those persons during their lifetimes, with sole ownership passing to the survivor at the death of the other joint tenant. In contrast, a tenancy in common is an estate in which there is unity of possession but separate and distinct titles. The essence of a JTWROS is the four

unities: interest, title, time, and possession. A JTWROS must be created by express words or by necessary implication, … , but there are no particular words which must be used in its creation. In fact, courts have found the intent to create a JTWROS trumps the use of imprecise or improper language in creating it.

\*\*\*

Intent is equally as significant when addressing the severance of a JTWROS as it is when considering whether a JTWROS was created. A joint tenancy is severed when one or more of the four unities is destroyed. [I]t is well settled in this state that a joint tenancy with right of survivorship is severable by the action, voluntary or involuntary, of either of the parties. An involuntary severance requires an act which effectively divests the joint tenant's interest, such as an attachment execution on a joint tenancy, or an assignment in trust or by judgment and execution.... A voluntary severance, such as is alleged here, occurs when one of the joint tenants takes affirmative steps to create a tenancy in common. For example, [a] joint tenant may obtain a severance or separation of the property or a decree granting partition and obtain thereby an undivided fee interest in one-half of the property. [A]lthough a voluntary act on the part of one of the joint tenants is adequate to work a severance, that act must be of sufficient manifestation that the actor is unable to retreat from his position of creating a severance of the joint tenancy.

***In re Estate of Quick***, 905 A.2d 471, 474-75 (Pa. 2006) (citations and quotations omitted).

The issue here is whether the inclusion of the spouses as grantors on a deed transferring a portion of the **surface** estate is an "affirmative step" that amounts to an act that is "of sufficient manifestation" of the intent to create a tenancy in common for the subsurface estate. ***Id***. Appellants have not cited any case law to persuade us that merely including spouses on these deeds for surface estate transfers does so. In fact, all three deeds

- 10 -

contain language to except and reserve rights to the subsurface estate, which, if anything, indicates the exact opposite intent as that posited by Appellants. Accordingly, Appellants are not entitled to relief on this basis.

Appellants next contend that the clauses which excepted and reserved rights to the OGMs in the subsurface estate in and of themselves severed the JTWROS, because they contain "no provision for survivorship between Carlton Wolz and Eva Wolz Hunt." Appellants' Brief at 22.

> The terms "exception" and "reservation" have been used interchangeably in deeds. A reservation pertains to incorporeal things that do not exist at the time the conveyance is made. However, even if the term "reservation" is used, if the thing or right reserved is in existence, then the language in fact constitutes an exception. If there is a reservation, it ceases at the death of the grantor, because the thing reserved was not in existence at the time of granting and the thing reserved vests in the grantee. An exception, on the other hand, retains in the grantor the title of the thing excepted. Because the exception does not pass with the grant, it demises through the grantor's estate absent other provisions.

*Ralston*, 55 A.3d at 741-42 (citations omitted).

In other words, the issue of survivorship turns on whether the clause involves an exception or a reservation. Coal, oil, timber, gas, and minerals are all corporeal things already in existence; thus, they squarely meet the requirements to be an exception, rather than a reservation. *See Ralston*, 55 A.3d at 742 ("[P]aragraph 1 speaks to coal, oil, timber, gas and minerals. These are things that are corporeal, and in existence prior to the deed. Paragraph 1 did not create a new right. Therefore, paragraph 1 created an

exception."). Thus, we agree with the trial court that "the excepting and reservation language as to the [OGMs] constituted an exception as to the subsurface estate and as such, retained the nature of the estate as it was granted, namely a [JTWROS]." Trial Court Opinion, 5/21/2014, at 8. Accordingly, Appellants are not entitled to relief.

Having concluded that the proper parties were present in this case to litigate a dispute in title; that transfers of the surface estate did not impact the subsurface estate; and, the clause in the deed created an exception, rather than a reservation, we affirm the order of the trial court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary


Date: 5/22/2015